Daniel I. Aquino (NSBN 12682)
John A. Fortin (NSBN 15221)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
daquino@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

David N. Lake (*Pro Hac Pending*)
Law Offices of David N. Lake
A Professional Corporation
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
david@lakelawpc.com

*Attorneys for Steven Khunovich*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN KHUNOVICH, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| LEDGER SAS, a foreign corporation; LEDGER TECHNOLOGIES, a Delaware corporation; and DOES 1 through 25, inclusive, | |
| Defendants. | |

Plaintiff, Steven Khunovich, by and through his attorneys, complains against defendant as follows:

**FACTS COMMON TO ALL CAUSES OF ACTION**

1. Security is ultra-critical when it comes to digital assets because the stakes are incredibly high. Cryptocurrencies stored in private wallets makes them particularly susceptible to hacks if not properly protected, and because transactions are irreversible, there must be an even greater emphasis on the deployment of robust cryptocurrency security practices.

2.       According to their website, Defendants Ledger SAS and Ledger Technologies started their "journey in 2014, by experts with complementary backgrounds to secure the blockchain revolution." It boasts that: "Ledger devices are trusted by millions, and powered by the Secure Element chip and Ledger's proprietary OS, battle-tested for years by security experts."

3.       Defendants routinely and affirmatively boasted about their products and platform, without any reservations, caveats, or disclaimers:

- "Ledger has built all its technology with the goal of getting certified at different levels by a set of third party auditors, laboratories and certification authorities." (Made on Ledger's website beginning at least in 2018).

- "Ledger Live is a single application that allows you to manage your device and access countless blockchain apps and services directly from your device. And you can do so knowing that transactions you sign in Ledger Live are secure and transparent. Put simply, Ledger provides the extra knowledge you might need to navigate the space safely." (Made on Ledger's website beginning at least in January 2024).

- "Creating the most secure crypto wallet involves testing both the physical components and the firmware. The Ledger Donjon is a security evaluation team, comprising leading security experts. This team of white-hat hackers is constantly testing the security of your device. These professionals are thorough; identifying every possible attack vector, and addressing issues immediately. If the Donjon finds a vulnerability in a device, it will immediately roll out a firmware update, meaning each new update improves the security of your Ledger.  This ensures that Ledger wallets are impenetrable—and stay that way." (Made on Ledger's website (in some form) beginning in January 2024).

- "Blind signing might sound scary, and honestly, it can be. No one wants to sign away their assets with unreadable transactions. This is why the Ledger ecosystem offers tools to ensure you never need to transact blindly." (Made on Ledger's website in November 2022 (updated September 2023)). (together, the "Statements").

4.       Unfortunately, the Statements were materially misleading and served only to cover-up the fundamental shortcomings of Defendants' product.

2

5. Plaintiff Steven Khunovich purchased and used a Ledger Nano S, a device marketed and sold by Defendants, and did for its intended purpose, and based upon the belief that the Nano S, and Ledger's platform, would deliver exactly the type of high-level security which he needed and as consistent with industry standards. At least that is what he believed based on what Defendants were saying, and before $720,000 was stolen from him.

6. Defendants are part of the cryptocurrency hardware wallet industry – an industry that has established clear security standards. These standards are recognized in Securities and Exchange Commission ("SEC") guidance and implemented by US-based competitors as essential for customer protection. Things such as: i) advanced encryption protocols; ii) multi-signature security features; iii) enhanced cold storage capabilities; and iv) robust customer verification systems, have become industry-standard measures. They are the seat belts and air bags of the cryptocurrency hardware wallet industry.

7. As a cryptocurrency wallet provider, Defendants owe fiduciary duties to their customers, including Plaintiff. Defendants assumed these duties by assuming control over security implementation, offering professional custodial services and control over customer assets, and possessing superior knowledge and expertise.

8. Despite this, and despite their usage and availability, Defendants (despite their representations and promises) failed to implement industry-standard security measures, including those offered by its competitors. Instead, Defendants offered a combination of inadequate encryption protocols, insufficient multi-signature security, compromised cold storage capabilities, and a substandard verification system.

9. Defendants' knowing failure to meet and maintain adequate security measures and protocols, and to follow industry established best practices, conspired to lead to predictable results. Indeed, these failures were made all the more negligent as a result of Defendants' disregard of known security vulnerabilities – weaknesses it failed to address itself or sufficiently warn its customer base of.

10. Defendants' technical failures, whether they be inadequate implementation of secure element technology, insufficient protection against supply chain attacks, vulnerable firmware update

3

processes, inadequate protection of sensitive customer data, or the failure to implement industry-level security standards, have led directly to Plaintiff's harm.

11.  Defendants have allowed for unauthorized access to customer wallets, compromised security systems, exposure of customer assets, and the loss of cryptocurrency holdings.

12.  Through their gross inaction, Defendants allowed third-parties to penetrate their system and, worse still, pose as legitimate communications from Defendants.

13.  Defendants' pre-existing knowledge of such nefarious activity is demonstrated by the posting of general "FYI" type notices.  It is also demonstrated by the security breach Defendants suffered:  "In December 2023, Ledger, a renowned crypto hardware wallet manufacturer, experienced a significant security breach. This hack not only raised concerns over the safety of digital assets but also sparked debates about the security practices of companies within the crypto space."  With respect to this breach, at least one industry publication said this: "The incident brought to light Ledger's past security issues, with some community members expressing scepticism [sic] about the company's commitment to operational security."[1]

14.  Defendants' gross negligence in addressing the known threats is demonstrated by what it failed to do, namely implement the type of industry wide security deployed by, among others, Defendants' competitors.

15.  The knowledge of existing threats and the ready availability of security measures which would have prevented the damage suffered by Plaintiff coupled with Defendants' decision to forego it amount to nothing less than gross negligence.

16.  Defendants' frequent advice to "never share your 24-word recovery phrase" is plainly insufficient, both as a practical and legal matter.  Indeed, similar disclaimers have not shielded companies from liability if they fail to meet industry standards for security or if their negligence facilitates fraud.  Such is the case here.

---

[1] https://zerocap.com/insights/snippets/ledger-hack-2023/

17. Defendants' fundamental failures raise key questions, including but not limited to how often Defendants conducted security audits and penetration testing to ensure the ongoing security of the wallet. Questions also abound regarding Defendants' adherence to General Data Protection Regulation (GDPR) data protection policies, its following of AML (Anti-Money Laundering) and KYC (Know Your Customer) requirements, and its obedience to ISO 27001 security standards and the Cryptocurrency Security Standard (CCSS) to ensure implementation of best practices in information security management.

18. The losses suffered by Plaintiff have nothing to do with securing his password and everything to do with Defendants' failure to take the available steps already used in the industry to prevent infiltration of their system by those posing as legitimate transactions.

19. Defendants' desire to shift the blame and escape responsibility is undermined by several facts and factors, including that: a) Defendants are selling a security product; b) they control the interface; c) they have the ability to prevent the type of harm suffered; d) they actively market their security promises; e) better security is demonstrably possible; and f) the cost of the available loss prevention measures is reasonable.

**THE PARTIES**

20. Plaintiff Steven Khunovich ("Plaintiff") is, and at all times relevant hereto was, an individual residing in the State of Nevada, County of Clark.

21. Plaintiff is informed and believes, and based thereon alleges, that defendant Ledger SAS ("SAS") is, and at all times relevant hereto was, a foreign corporation, but one which actively and knowingly availed itself of the United States markets and consumers, and, on information and belief, one which maintained a United States presence with offices located in, among other places, San Francisco, California and Portland, Oregon.

22. Plaintiff is informed and believes, and based thereon alleges, that defendant Ledger Technologies ("Ledger Tech.") is, and at all times relevant hereto was, a Delaware corporation with its principal place of business in New York. Plaintiff is informed and believes, and based thereon alleges, that Ledger Tech. operates as a wholly owned subsidiary of SAS and does not have independent operations, income, or products, serving solely as a U.S. based entity for SAS's

1  activities.  Ledger Tech. has actively and knowingly availed itself of the United States markets and
2  consumers, and one which maintained a United States presence with offices located in New York.
3  SAS and Ledger Tech. shall be referred to collectively as "Defendants."

4      23.    Plaintiff presently is unaware of the true names and capacities of defendants sued
5  herein as Does 1 through 25, inclusive, and therefore sues these defendants by such fictitious names.
6  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

7      24.    Plaintiff is informed and believes, and on that basis alleges, that each of the
8  fictitiously named defendants is responsible in some manner for the occurrences alleged in this
9  Complaint, and Plaintiff's damages as alleged herein were proximately caused by their conduct.  To
10 the extent of any limited liability company or corporate defendant's wrongful conduct, it is believed
11 that any such defendant's managers, corporate officers, and directors ratified and approved any
12 wrongful conduct alleged in this complaint or were directly responsible for perpetrating such
13 conduct.

14     25.    Plaintiff is informed and believes, and on that basis alleges, that each of the
15 defendants named herein is, and at all times relevant herein was, a party to the unlawful acts and
16 omissions complained of herein and acted in concert or combination with each of the other
17 defendants with respect to the actions and matters described in this Complaint or has aided and
18 abetted such other defendants with respect thereto.

**JURISDICTION AND VENUE**

20     26.    As set forth in detail herein, Plaintiff seeks to recover in excess of $75,000 from
21 Defendants.

22     27.    Plaintiff is informed and believes, and based thereon alleges, that this Court has
23 personal jurisdiction over Defendants.

24     28.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §
25 1332(a).

26     29.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

**FIRST CLAIM FOR RELIEF**

(Intentional Misrepresentation)

(Against Defendants and Certain Doe Defendants)

30. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, and incorporates them as though fully set forth herein.

31. Defendants, through their advertising, marketing, and promotions, repeatedly and regularly made misrepresentations of fact to Plaintiff, an intended and targeted recipient of the messaging. More specifically, Defendants made the Statements with the intention that Plaintiff would rely on them by purchasing the Nano wallet from them and using it to secure his cryptocurrency transactions.

32. Plaintiff reasonably and actually relied on Defendants Statements, believing them to be true and accurate in terms of what they said about the security provided through their devices, including the Nano wallet.

33. Defendants either knew or should have known that their Statements were not accurate and that their platform was not secure, but rather suffered vulnerabilities which Defendants knew of and had the ability to remedy, yet chose not to.

34. Plaintiff suffered harm as a direct and proximate result of Defendants' Statements, as he relied on Defendants' touted security to protect him from the type of attack and vulnerability which resulted in Plaintiff's loss of $720,000.

35. Defendants' conduct, acts and omissions were oppressive, fraudulent and/or malicious and, therefore, Plaintiff is entitled to an award of punitive damages and exemplary damages in an unascertained amount, according to proof.

**SECOND CLAIM FOR RELIEF**

(Negligent Misrepresentation)

(Against Defendants and Certain Doe Defendants)

36. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, and incorporates them as though fully set forth herein.

37. Defendants, through their advertising, marketing, and promotions, repeatedly and regularly made misrepresentations of fact to Plaintiff, an intended and targeted recipient of the messaging. More specifically, Defendants' Statements were made with the intention that Plaintiff would rely on them by purchasing the Nano wallet from them and using it to secure his cryptocurrency transactions.

38. Plaintiff reasonably and actually relied on the Statements, believing them to be true and accurate in terms of what they said about the security provided through their devices, including the Nano wallet.

39. Defendants did not have reasonable grounds for believing the Statements to be true at the time they were made. Those Statements were made with respect to the security of their device and platform even though they knew or should have known they suffered from vulnerabilities which had the ability to remedy, yet chose not to.

40. Plaintiff suffered harm as a direct and proximate result of Defendants' Statements, as he relied on Defendants' touted security to protect him from the type of attack and vulnerability which resulted in Plaintiff's loss of $720,000.

### THIRD CLAIM FOR RELIEF

(Negligence)

(Against Defendants and Certain Doe Defendants)

41. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, and incorporates them as though fully set forth herein.

42. Defendants were under a duty to Plaintiff to provide the level of security which Plaintiff expected based on Defendants' Statements and based upon the level of security available and provided by others within Defendants' industry.

43. More specifically, Defendants' failed to meet and maintain adequate security measures and protocols, and to follow industry established best practices. Defendants' failures were made all the more inexcusable as a result of Defendants' disregard of known security vulnerabilities – weaknesses it failed to address itself or sufficiently warn its customer base of.

44.     Defendants' technical failures, whether they be inadequate implementation of secure element technology, insufficient protection against supply chain attacks, vulnerable firmware update processes, inadequate protection of sensitive customer data, or the failure to implement industry-level security standards, led directly to Plaintiff's harm and were the proximate cause thereof.

45.     Defendants' behavior evidences a want of even scant care, an extreme departure from the ordinary standard of conduct.  Defendants acted with such a lack of care as to indicate a passive and indifferent attitude toward the results of their behavior.

46.     Plaintiff's harm was the direct and proximate result of Defendants' negligence, and will be subject to proof at trial, but in excess of the jurisdictional minimum of this Court.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. For compensatory damages of no less than $75,000.01 as and for the losses suffered;
2. For exemplary damages as provided under law;
3. For prejudgment interest at the maximum rate permitted by law;
4. For costs of suit incurred herein; and
5. For any and all other relief as the court deems just and proper.

Dated this 6th day of January, 2026.

        MCDONALD CARANO LLP

        By: /s/ *Daniel I. Aquino*
           Daniel I. Aquino (NSBN 12682)
           John A. Fortin (NSBN 15221)
           2300 West Sahara Avenue, Suite 1200
           Las Vegas, Nevada 89102
           Telephone: (702) 873-4100
           daquino@mcdonaldcarano.com
           jfortin@mcdonaldcarano.com

        David N. Lake (*Pro Hac Pending*)
        Law Offices of David N. Lake
        A Professional Corporation
        16130 Ventura Boulevard, Suite 650
        Encino, California 91436
        Telephone: (818) 788-5100
        david@lakelawpc.com

        *Attorneys for Steven Khunovich*