TREY A. ROTHELL, ESQ.
Nevada Bar No. 15993
DENTONS DURHAM JONES PINEGAR P.C.
1180 North Town Center Drive, Suite 200
Las Vegas, Nevada 89144
Telephone: 702.988.3030
Facsimile: 702.988.3029
trey.rothell@dentons.com

MARK A. SILVER, ESQ. *(Admitted Pro Hac Vice)*
Georgia Bar No. 811928
LEANNE E. SUNDERLAND, ESQ. *(Admitted Pro Hac Vice)*
Georgia Bar No. 351965
DENTONS US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: 404.527.4000
Facsimile: 404.527.4198
mark.silver@dentons.com
leanne.sunderland@dentons.com

*Attorneys for Ledger SAS*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN KHUNOVICH,<br><br>       Plaintiff,<br><br>       vs.<br><br>LEDGER SAS, a foreign corporation; and DOES 1 through 25, inclusive,<br><br>       Defendant. | CASE NO, 2:26-CV-00016-JAD-MDC<br><br>**DEFENDANT LEDGER SAS' MOTION TO DISMISS FOR FORUM NON CONVENIENS, AND FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME**<br><br>*Oral Argument Requested* |

Defendant Ledger SAS ("Defendant" or "Ledger") moves to dismiss Plaintiff Steven Khunovich's ("Plaintiff" or "Khunovich") Complaint, see ECF No. 5-1, with prejudice pursuant to forum non conveniens and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, showing the Court as follows: (1) Plaintiff's claims implicate the forum selection clause contained within Ledger Lives' Terms and Conditions which requires Plaintiff's claims to be resolved by the competent courts of Paris, France and Plaintiff's claims should be dismissed in their entirety due to *forum non conveniens*; and (2) Plaintiff fails to state a claim upon which relief can be granted as to each of the claims brought against Defendant. This Motion is based on the attached memorandum of points and authorities, the papers and pleadings on file in this action, the documents referenced therein, and any oral argument allowed by the Court.

Dated: June 22, 2026.

DENTONS US LLP

By:  */s/ Leanne E. Sunderland*
MARK A. SILVER, ESQ.
*(Admitted Pro Hac Vice)*
Georgia Bar No. 811928
LEANNE E. SUNDERLAND, ESQ.
*(Admitted Pro Hac Vice)*
Georgia Bar No. 351965

DENTONS DURHAM JONES PINEGAR P.C.

*/s/ Trey A. Rothell*
TREY A. ROTHELL, ESQ.
Nevada Bar No. 15993

*Attorneys for Ledger SAS*

TABLE OF CONTENTS

Page

Introduction ................................................................................................................ 1

Statement of Facts Alleged in Complaint ................................................................. 1

Legal Standard .......................................................................................................... 3

Argument .................................................................................................................. 4

I.      Plaintiff's Complaint Should be Dismissed For *Forum Non Conveniens*. ................ 4

      A.     The Forum Selection Clause is Enforcable. ........................................ 5

           1.     The Forum Selection Clause is Enforceable Under U.S. Law. ............ 5

           2.     The Forum Selection Clause is Enforceable Under French Law. ........................................................................................ 7

      B.     France is an Adequate Alternative Forum. .......................................... 8

           1.     France Affords Plaintiff Adequate Remedies. ..................................... 8

           2.     The Balance of Public Interest Factors Favors Dismissal. ................. 9

II.     The Complaint Fails to State a Claim Upon Which Relief Should be Granted ........ 12

      A.     The Complaint Fails to Sufficiently Allege Intentional Misrepresentation ....................................................................... 12

           1.     Ledger's Alleged Representations are Not False. .............................. 12

           2.     The Statements were Not Known or Believed to be False by Ledger. .................................................................................. 14

           3.     Ledger Did Not Induce Plaintiff to Rely on the Statements. .............. 15

           4.     Plaintiff Suffered No Damages As a Result of His Alleged Reliance. ................................................................................ 17

      B.     The Complaint Fails to Sufficiently Allege Gross Negligent Misrepresentation ....................................................................... 18

      C.     The Complaint Fails to Sufficiently Allege a Claim for Gross Negligence. ................................................................................ 20

Conclusion .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash over the Mid-Atlantic on June 1, 2009*,
  760 F.Supp.2d 832 (N.D. Cal. 2010) .......................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................4, 15, 16, 18

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013)................................................................................................3, 4, 8

*ATLP by and through Taylor v. Corecivic, Inc.*,
  No. 2:21-CV-2072 JCM (EJY), 2022 WL 22652601 (D. Nev. Aug. 15, 2022)
  .......................................................................................................................20, 21, 22

*Babbage Holdings, LLC v. Ubisoft, Inc.*,
  No. 2:13-CV-758-JRG, 2014 WL 4913092 (E.D. Tex. Sep. 29, 2014) .................................11

*Bank of Am., N.A. v. Casoleil Homeowners Ass'n*,
  No. 3:16-cv-00307-MMD-WGC, 2019 WL 2601555 (D. Nev. June 25, 2019) ....................22

*Batista v. Goodyear Dunlop Tires of N. Am., LLC*,
  No. 2:06-CV-00820-KJD-GWF, 2007 U.S. Dist. LEXIS 98724 (D. Nev. July 3,
  2007) ........................................................................................................................8

*Baton v. Sas*,
  No. 21-cv-02470-EMC, 2025 WL 416360 (N.D. Cal. Feb. 6, 2025) .......................................8

*Behrens v. Arconic, Inc.*,
  No. 19-2664, 2019 WL 7049946 (E.D. Pa. Dec. 20, 2019).......................................................11

*Blanchard v. Blanchard*,
  108 Nev. 908, 839 P.2d 1320 (1992) ...................................................................................17

*Bulbman, Inc. v. Nev. Bell*,
  108 Nev. 105, 825 P.2d 588 (1992)........................................................................................15

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011) ................................................................................................4

*Chattem v. BAC Home Loan Servicing LP*,
  No. 2:11-CV-1727-KJD-RJJ, 2012 WL 2048199 (D. Nev. June 5, 2012)............................14

*Clark Sanitation v. Sun Valley Disposal*,
  87 Nev. 338, 487 P.2d 337 (1971) .......................................................................................15

*Collins v. Burns*,
 103 Nev. 394, 741 P.2d 819 (1987) ..................................................................................15

*Connex R.R. LLC v. AXACorporate Sols. Assurance*,
 No. CV 16-02368-ODW (RAOx), 2017 WL 3433542 (C.D. Cal. Feb. 22, 2017) .............9, 10

*Cooper v. Tokyo Elec. Power Co.*,
 860 F.3d 1193 (9th Cir. 2017) ...........................................................................................3

*Dattner v. Conagra Foods*, Inc.,
 91 Fed. Appx. 179 (2d Cir. 2004) ......................................................................................8

*DBS Sols. LLC v. Infovista Corp.*,
 No. 3:15-CV-03875-M, 2016 WL 3926505 (N.D. Tex. July 21, 2016) ..................................7

*Dearaujo v. PNC Bank, Nat'l Ass'n*,
 No. 2:12-cv-00981-MMD-PAL, 2012 WL 5818131 (D. Nev. Nov. 15, 2012) .......................23

*Doe 1 v. AOL LLC*,
 552 F.3d 1077 (9th Cir. 2009) ...........................................................................................5

*Donell v. Fidelity Nat. Title Agency of Nev., Inc.*,
 No. 2:07-cv-00001-KJD, 2012 WL 1669421 (D. Nev. May 11, 2012) .................................18

*Edry v. Hometown Equity Mortg., LLC*,
 No. 2:22-CV-00804-MMD-VCF, 2023 WL 3250830 (D. Nev. Jan. 31, 2023) .......................5

*Foster v. Dingwall*,
 126 Nev. 56, 227 P.3d 1042 (2010) ...................................................................................17

*Gschwind v. Cessna Aircraft Co.*,
 161 F.3d 602 (10th Cir. 1998) ...........................................................................................8

*Hardy v. Chromy*,
 367 P.3d 777 (2010) ..........................................................................................................12

*Ingram v. Hamsquad, Inc.*,
 No. 2:21-cv-09664-FWS (KSx), 2023 WL 7276562 (C.D. Cal. July 20, 2023) ...............5, 6

*Korea CGM Members Ass'n v. Netflix, Inc.*,
 No. 24-267-GBW, 2025 WL 660840 (D. Del. Feb. 28, 2025) ..............................................9

*LaPena v. Las Vegas Metro. Police Dep't*,
 No. 2:21-CV-2170 JCM (NJK), 2023 WL 8186592 (D. Nev. Nov. 27, 2023) ......................14

*Lash Grp., LLC v. Daya Meds., Inc.*,
 No. 2:24-cv-00843-ART-EJY, 2025 WL 2374339 (D. Nev. Aug. 13, 2025) ........................19

*Lueck v. Sundstrand Corp.*,
 236 F.3d 1137 (9th Cir. 2001) .......................................................................................8, 9

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972)..........................................................................................................5

*Martin v. Collier*,
 No. 2:11-cv-0320-LRH-GWF, 2011 WL 1628028 (D. Nev. Apr. 28, 2011).........................21

*Meredith v. Weilburg*,
 No. 3:13-cv-00277-RCJ-WGC, 2013 WL 5658181 (D. Nev. Oct. 15, 2013)..................15, 16

*Momot v. Mastro*,
 No. 2:09-cv-00975-RLH-LRL, 2010 WL 2696635 (D. Nev. July 6, 2010)..........................19

*Montage Tech. Grp. Ltd. Sec. Litig.*,
 78 F.Supp.3d 1215 (N.D. Cal. 2015) ..................................................................................4

*Mort v. United States*,
 86 F.3d 890 (9th Cir. 1996) ...............................................................................................5

*Nelson v. Heer*,
 123 Nev. 217, 163 P.3d 420 (2007) ...........................................................................12, 17

*Nev. Rest. Servs., Inc. v. Factory Mut. Ins. Co.*,
 No. 2:22-cv-01104-RFB-VCF, 2023 WL 2572301 (D. Nev. Mar. 20, 2023).......................18

*Porchia v. City of Las Vegas*,
 138 Nev. 29, 504 P.3d 515 (2022) ....................................................................................20

*Price v. OneWest Bank Grp.*, LLC,
 2:12-cv-02030-GMN-GWF, 2013 WL 5328847 (D. Nev. Sept. 20, 2013)...........................19

*Reed v. Allstate Ins. Co.*,
 No. 2:15-CV-01759-GMN-VCF, 2016 WL 1558364 (D. Nev. Apr. 14, 2016)...............12, 13

*Saticoy Bay, LLC et al. v. Thornburg Mortg. Sec. Trust*,
 138 Nev. 335, 510 P.3d 139 (2022) ...................................................................................12

*Spikes v. Nevada*,
 No. 2:24-cv-00528-RFB-DJA, 2025 WL 289217 (D. Nev. Jan. 23, 2025)...........................23

*Stellia Ltd. v. B+S Card Serv. GmbH*,
 No. 2:12-cv-1099-GMN-PAL, 2013 WL 6388656 (D. Nev. Dec. 5, 2013)...........................10

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
 No. SACV 11-0093 DOC (RZx), 2011 WL 2940992 (C.D. Cal. July 18, 2011).....................9

*Strong v. Bank of N.Y. Mellon*,
 No. 2:13-cv-656-JAD-GWF, 2015 WL 3369564 (D. Nev. May 22, 2015) ...........................12

*Superama Corp. v. Tokyo Broad. Sys. Television, Inc.*,
 No. CV 22-0299-MWF (JCx), 2025 WL 4061973 (C.D. Cal. Dec. 2, 2025)..........................10

*Tai-Si Kim v. Kearney*, 838 F.Supp.2d 1077 (D. Nev. 2012) ........................................................14

*Takiguchi v. MRI Int'l, Inc.*,
    No. 2:13-cv-01183-HDM-VCF, 2015 WL 6661479 (D. Nev. Oct. 29, 2015) ........................10

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*,
    125 Nev. 66, 206 P.3d 81 (2009) ........................................................................................23

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ..............................................................................................18

*Underwood v. O'Reilly Auto Parts, Inc.*,
    699 F.Supp.3d 1049 (D. Nev. 2023).....................................................................................20

*United States v. My Left Foot Children's Therapy, LLC*,
    No. 2:14-cv-01786-MMD-GWF, 2017 WL 1902159 (D. Nev. May 9, 2017).......................22

*Wilson v. Craver*,
    994 F.3d 1085 (9th Cir. 2021) .................................................................................................4

*WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*,
    750 F.Supp.2d 1180 (D. Nev. 2010)......................................................................................12

*Wondershare Tech. Grp. Co. v. Superace Software Tech. Co., Ltd.*,
    No. 25-cv-07322-JSC, 2026 WL 103182 (N.D. Cal. Jan. 14, 2026).......................................11

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ...............................................................................4, 6, 7, 8

**Statutes**

C. civ. art.1137 (fr.) ...................................................................................................................9

C. civ. art. 1192 (fr.) .................................................................................................................7

C. civ. art. 1241 (fr.) .................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................4

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**INTRODUCTION**

Plaintiff Steven Khunovich's ("Plaintiff") Complaint should be dismissed in its entirety. As an initial matter, this case should not be litigated in Nevada. Plaintiff's use of the device and Ledger Live is governed by the Ledger Live Terms of Use. These terms contain a valid and enforceable forum selection clause requiring that all relevant disputes be resolved by the competent courts of Paris, France, in addition to a choice of law provisions designating French law as the governing law. Because the forum selection clause is valid and enforceable, the Complaint should be dismissed on forum non conveniens grounds.

Even assuming arguendo that this Court is the proper forum for Plaintiff's claims, Plaintiff fails to adequately allege facts in support of his intentional misrepresentation, gross negligent misrepresentation, and gross negligence claims and the Complaint should be dismissed with prejudice.

**STATEMENT OF FACTS ALLEGED IN COMPLAINT**

Plaintiff's Complaint alleges that Defendant Ledger SAS ("Defendant" or "Ledger") is part of the "cryptocurrency hardware wallet industry." (See ECF No. 5-1 (hereinafter "Compl.") ¶ 6). Plaintiff alleges that he purchased a cryptocurrency wallet, the Ledger Nano S ("Nano"), as marketed and sold by Ledger. (*Id.* ¶ 5). Users are prompted to install and access the Ledger Live application when first using their Ledger device. (*See* Declaration of Pascal Gauthier, attached hereto as Exhibit A (hereinafter "Decl."), ¶ 5). To access and use the Ledger Live application, all users are required to accept the Ledger Live Terms of Use during the software installation process. (*Id.*, ¶ 6). Plaintiff's use of the device and Ledger Live is governed by the Ledger Live Terms of Use. (*Id.*, ¶ 7). Specifically, the relevant Ledger Live Terms of Use provide that:

> Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by the competent courts of Paris, France.

(*See* Decl., ¶ 13, Ex. 1.).

Plaintiff alleges he purchased and used the Nano based upon the belief that it would offer the "type of high-level security which he needed . . . based on what Defendants were saying." (Compl. ¶

5). Specifically, the Complaint alleges that Ledger made the following statements on the Ledger website:

- "Ledger has built all its technology with the goal of getting certified at different levels by a set of third party auditors, laboratories, and certification authorities." (Made on Ledger's website beginning at least in 2018).

- "Ledger Live is a single application that allows you to manage your device and access countless blockchain apps and services directly from your device. And you can do so knowing that transactions you sign in Ledger Live are secure and transparent. Put simply, Ledger provides the extra knowledge you might need to navigate the space safely." ( Made on Ledger's website beginning at least in January 2024).

- "Creating the most secure crypto wallet involves testing both the physical components and the firmware. The Ledger Donjon is a security evaluation team, comprising leading security experts. This team of white-hat hackers is constantly testing the security of your device. These professionals are thorough; identifying every possible attack vector, and addressing issues immediately. If the Donjon finds a vulnerability in a device, it will immediately roll out a firmware update, meaning each new update improves the security of your Ledger. This ensures that Ledger wallets are impenetrable— and stay that way." ( Made on Ledger's website (in some form) beginning in January 2024).

- "Blind signing might sound scary, and honestly, it can be. No one wants to sign away their assets with unreadable transactions. This is why the Ledger ecosystem offers tools to ensure you never need to transact blindly." (Made on Ledger's website in November 2020 (updated September 2023)). (together, the "Statements").

(*Id.* ¶ 3).

Plaintiff alleges these statements were "materially misleading" (*id.* ¶ 4) and that Ledger "repeatedly and regularly made misrepresentations of fact[.]" (*Id.* ¶ 31). The Complaint also alleges that "Defendants either knew or should have known that their statements were not accurate and that their platform was not secure." (*Id.* ¶ 33). The Complaint alleges "Defendants did not have reasonable grounds for believing the Statements to be true at the time they were made" and that "they knew or should have known they suffered from vulnerabilities which had [sic] the ability to remedy, yet chose not to." (*Id.* ¶ 39). The Complaint alleges that Ledger "knowing[ly] fail[ed] to meet and maintain adequate security measures and protocols" or that Ledger "disregard[ed] [] known security vulnerabilities" (*id.* ¶ 9) or that Ledger had "pre-existing knowledge of such nefarious activity" (*id.* ¶

13)[1] by referencing an alleged hacking incident Ledger experienced in December 2023. (*Id.* ¶ 13). The Complaint alleges that Ledger "failed to meet and maintain adequate security measures and protocols, and to follow industry established best practices." (*Id.* ¶ 43).

The Complaint also alleges that "Defendants made the statements with the intention that Plaintiff would rely on them by purchasing the Nano wallet from them and using it to secure his cryptocurrency transactions" (*id.* ¶ 31) and that "Plaintiff reasonably and actually relied on Defendant's Statements[.]" (*Id.* ¶ 32). Plaintiff alleges he "suffered harm as a direct and proximate result of Defendants' Statements, as he relied on Defendants' touted security to protect him from the type of attack and vulnerability which resulted in Plaintiff's loss of $720,000." (*Id.* ¶ 34). The Complaint alleges that Plaintiff's losses are the result of "Defendants' failure to take the available steps already used in the industry to prevent infiltration of their system by those posing as legitimate transactions." (*Id.* ¶ 18).

The Complaint alleges that Defendants posted "general 'FYI' type notices" to consumers warning against "nefarious activity" (*Id.* ¶ 13) and gave "frequent advice" to "never share your 24-word recovery phrase[.]" (*Id.* ¶ 16). The Complaint also alleges that Ledger offers a combination of encryption protocols, multi-signature security, cold storage capability, and a verification system. (*Id.* ¶ 8). The Complaint asserts claims for (1) Intentional Misrepresentation; (2) Gross Negligent Misrepresentation; and (3) Gross Negligence.

**LEGAL STANDARD**

"The doctrine of forum non conveniens allows a court to dismiss a case properly before it when litigation would be more convenient in a foreign forum." *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1210 (9th Cir. 2017). When the dismissal motion for forum non conveniens is based on a valid forum-selection clause, "that clause should be given controlling weight in all but the most exceptional

---

[1] Plaintiff's attempt to manufacture a history of hardware "vulnerabilities" by citing a December 2023 incident is highly misleading and directly contradicted by his own referenced source as the very article cited in Plaintiff's Complaint acknowledges this incident involved a compromised external JavaScript library (the Connect Kit) used for interacting with third-party Apps and was not a breach of Ledger's hardware. The Court can take judicial notice of the publicly available article here: https://www.ledger.com/blog/security-incident-report

cases." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 61 (2013). A court "must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1092 (9th Cir. 2018).

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Courts accept material factual allegations as true for purposes of a motion to dismiss, but they "need not accept as true legal conclusions couched as factual allegations." *Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021).

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS.*

Plaintiff's Complaint should be dismissed due to forum non conveniens. Plaintiff's use of the device and Ledger Live is governed by the Ledger Live Terms of Use. (*See* Decl., ¶¶ 6-7). The terms include a valid and enforceable forum selection clause mandating that any dispute be governed and interpreted under the laws of France. (*Id.* ¶ 13, Ex. 1 § 11.3). "Forum non conveniens is a common law doctrine allowing a court to decline to exercise its jurisdiction in cases where litigation in the forum would place an undue burden upon one of the parties." In re *Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F.Supp.3d 1215, 1221 (N.D. Cal. 2015). Usually, in deciding whether to dismiss an action for forum non conveniens, a court considers (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favor dismissal. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). However, where there is a forum selection clause that governs the dispute, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. A court should not consider arguments about the parties' private interests but "a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is

4

that forum-selection clauses should control except in unusual cases." *Id.* at 64.

**A.    The Forum Selection Clause is Enforceable.**

The court should dismiss for forum non conveniens because a valid and enforceable forum selection clause exists.

**1.    The Forum Selection Clause is Enforceable Under U.S. Law.**

Forum selection clauses are "'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Importantly, should a plaintiff challenge the validity of a forum selection clause, he would bear a "'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Id.* (citations omitted). When interpreting a forum selection clause, courts look for guidance "to general principles for interpreting contracts." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Pursuant to the general principles of contract interpretation, "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Id.*

For example, in *Ingram v. Hamsquad, Inc.*, No. 2:21-cv-09664-FWS (KSx), 2023 WL 7276562, at *4 (C.D. Cal. July 20, 2023) the court considered the plain language of a forum selection clause that provided "[a]ll claims, disputes, or disagreement which may arise out of the interpretation, performance or breach of this Agreement shall be submitted exclusively to the jurisdiction of the courts of the State of Florida."[2]   The court explained that the plain meaning provided exclusively for jurisdiction in Florida state courts. *Id.* at *3. Moreover, while the clause only applied to disputes relating to the interpretation and performance of the contract because it used the words "arise out of the interpretation, performance or breach of the Agreement[]" the contract's narrow construction did

---

[2] Notably, "Nevada courts often look to California law where Nevada law is silent." *See Edry v. Hometown Equity Mortg., LLC*, No. 2:22-CV-00804-MMD-VCF, 2023 WL 3250830, at *6 (D. Nev. Jan. 31, 2023); *see also Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996) ("Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance.").

not prevent the clause from applying to plaintiff's noncontractual claims because forum selection clauses "can be equally applicable to contractual and tort causes of action." *Id.* at *4. The court went on to find that all plaintiff's claims related to the interpretation or performance of the agreement because they depended on or implicated the terms of the agreement and thus required contract interpretation. *Id.* Thus, the court granted the defendant's motion to dismiss for plaintiff to refile in Florida state court. *Id.* at *8; see also *Yei A. Sun*, 901 F.3d at 1086 ("By contrast, forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement. The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract.").

Here, Ledger has presented a prima facie valid forum selection clause contained within the Ledger Live terms and conditions which provide:

> Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by the competent courts of Paris, France.

(*See* Decl. ¶ 13, Ex. 1 § 11.3) (emphasis added).

These terms are the entire and exclusive understanding of the "agreement between Ledger and [the user] regarding Ledger Live." (*Id.* ¶ 12.1). In applying the court's holding in Ingram, the plain meaning of the Terms of Use in stating disputes are to be resolved by "courts of Paris, France" means that Plaintiff's claims be brought in a court located in Paris, France.

Nevertheless, Plaintiff may argue that the forum selection clause is inapplicable because he is not alleging a breach of the Ledger Live Terms of Use themselves. But, such attempt is futile. First, Plaintiffs' claims clearly have a causal connection to the Ledger Live agreement. (*See* Compl. ¶¶ 3-4) (alleging the statement, "Ledger Live is a single application that allows you to manage your device and access countless blockchain apps and services directly from your device" is "materially misleading"); (*see also id.*) (alleging "[a]nd you can do so knowing that transactions you sign in Ledger Live are secure and transparent" is "materially misleading"). Second, as explained by the court in Ingram, forum selection clauses can be equally applied to a plaintiff's noncontractual tort causes of action. *See Ingram*, 2023 WL 7276562, at *4. And finally, the terms broadly apply to "any dispute" "arising out of or

relating to" the agreement including "any dispute regarding non-contractual obligations . . . relating to it." (*See* Decl. ¶ 13, Ex. 1 § 11.3) (emphasis added). Such general "relating to" terms in a forum selection clause broadly capture tort-based claims and should not be narrowly construed to only contract-based claims. *See Yei A. Sun*, 901 F.3d at 1086 ("By contrast, forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement. The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract."). Thus, the forum selection clause is enforceable as to Plaintiff's claims under federal law.

### 2.     The Forum Selection Clause is Enforceable Under French Law.

Even under French law, the forum selection clause is enforceable. Under the law of France, "courts interpreting a contract attempt to discern the mutual intent of the parties." *DBS Sols. LLC v. Infovista Corp.,* No. 3:15-CV-03875-M, 2016 WL 3926505, at *3 (N.D. Tex. July 21, 2016) (analyzing and citing to Principles of French Law (2d ed.) (John Bell, Sophie Boyron, and Simon Whittaker)). Similar to U.S. courts, French law also applies a plain reading of the contractual terms. *See* C. civ. art. 1192 (fr.) ("Clear and precise clauses cannot be interpreted without distortion."). Under French law, "a clear and precise contract must not be 'denatured' by resort to one party's declaration of intent.'" *DBS,* 2016 WL 3926505, at *3 (citing Principles of French Law (courts must not "under the pretext of equity exclude the legal consequences of agreements") (citing France's highest court, the Cour De cassation)). Importantly, "French courts favor forum selection clauses in international commercial agreements[.]" *Id.*

Here, and as discussed above, the Ledger Live Terms of Use apply to Plaintiff's claims and French courts will enforce the forum selection clause therein. The Complaint relies on alleged misrepresentations about Ledger Live and that Plaintiff's alleged loss as a direct result of his use of the Ledger Live application. Because Plaintiff's claims are subject to the Ledger Live Terms of Use which contain a clear forum selection clause, under French law the forum selection clause is enforceable and Plaintiff must bring his claims in a court in Paris, France. Accordingly, under both U.S law and French law, the forum selection clause is enforceable.

## B.    France is an Adequate Alternative Forum.

Once the court determines that the forum selection clause is enforceable, the court "must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Yei A. Sun*, 901 F.3d at 1092. Additionally, a district court "should not consider argument about the parties' private interests," but "may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64. This court should dismiss for forum non conveniens based on the forum selection clause because 1) France affords the plaintiff adequate remedies, and 2) the public-interest factors weigh in Ledger's favor.

### 1.    France Affords Plaintiff Adequate Remedies.

French law provides a sufficient remedy for Plaintiff's claims. "A forum is adequate if it provides plaintiff with a 'sufficient remedy for his wrong.'" *Batista v. Goodyear Dunlop Tires of N. Am., LLC*, No. 2:06-CV-00820-KJD-GWF, 2007 U.S. Dist. LEXIS 98724, at *5 (D. Nev. July 3, 2007) (internal citations omitted). "Defendants need only show that there is a potential redress for the injury alleged. The fact that the substantive law may be less favorable is relevant only if it would completely deprive a plaintiff of any remedy or would result in unfair treatment." *Id.* at *8. See *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001) (affirming dismissal of action because New Zealand was an adequate forum even if its laws offered the plaintiff a lesser remedy than he could expect to receive in the United States court system); *see also Batista*, 2007 U.S. Dist. LEXIS 98724, at *8.

Notably, United States courts have consistently found that France is an adequate forum. *See Baton v. Sas*, No. 21-cv-02470-EMC, 2025 WL 416360, at *7 (N.D. Cal. Feb. 6, 2025) (finding France adequate alternative forum even though state statutory claims had no equivalents in France because "avenues for redress need not be as comprehensive or favorable as the specific causes of action pursued in the American jurisdiction."); *In re Air Crash over the Mid-Atlantic on June 1, 2009*, 760 F.Supp.2d 832, 842 (N.D. Cal. 2010) (holding France was an adequate forum); see also *Dattner v. Conagra Foods, Inc.*, 91 Fed. Appx. 179, **2 (2d Cir. 2004) (affirming district court dismissal on forum non conveniens grounds following conclusion that France was an adequate alternative forum); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606-07 (10th Cir. 1998) (France is an adequate forum)).

Here, France is an adequate alternative forum. Plaintiff's Complaint sets forth three causes of

action: (1) Intentional Misrepresentation; (2) Gross Negligent Misrepresentation; and (3) Gross Negligence. (See generally, Compl.). French law recognizes these types of claims. See C. civ. art.1137 (fr.) ("The intentional concealment by one of the contracting parties of information which he knows to be decisive for the other party also constitutes fraud."); C. civ. art. 1241 (fr.) ("Everyone is liable for damage caused not only by their own actions, but also by their negligence or imprudence."). Thus, French law provides a sufficient remedy for Plaintiff's claims by recognizing Plaintiff's causes of action and offering potential redress for his alleged injuries.

### 2. The Balance of Public Interest Factors Favors Dismissal.

The public interest factors that courts consider when deciding whether to dismiss for *forum non conveniens* include: "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Sundstrand Corp.*, 236 F.3d at 1147 (internal citations omitted). All of these factors weigh in Ledger's favor.

#### a. Nevada Does Not Have a Local Interest in This Lawsuit.

The purpose of the local interest factor is to help "determine 'if the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding in spite of the[] burdens.'" *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, No. SACV 11-0093 DOC (RZx), 2011 WL 2940992, at *9 (C.D. Cal. July 18, 2011). In determining whether a state has its own identifiable interest in a controversy, courts consider various factors including: (1) the magnitude of the controversies impact on each states' citizens and (2) whether the defendant is engaged in continuous and substantial business activity within its borders. *Korea CGM Members Ass'n v. Netflix, Inc.*, No. 24-267-GBW, 2025 WL 660840, at *8 (D. Del. Feb. 28, 2025) (finding this factor weighed in favor of forum non conveniens dismissal where the controversy had a greater impact on the affairs of Korean citizens than Delaware citizens).

Here, Nevada has no interest in this lawsuit other than Plaintiff being a resident of Nevada. But, the controversy greatly impacts the French company, Ledger. Any discovery that may be needed in this action would invoke France's interest in protecting Ledger's information from the United States discovery practices. See *Connex R.R. LLC v. AXACorporate Sols. Assurance*, No. CV 16-02368-ODW

(RAOx), 2017 WL 3433542, at *16 (C.D. Cal. Feb. 22, 2017) ("France has an interest in controlling foreign access to information within its borders, and in protecting its citizens from foreign discovery practices it views as antithetical to the French legal culture.") (citation omitted). Importantly, Ledger, does not maintain an office, nor physical presence of any kind in Nevada. (*See* Decl., ¶ 9). As a result, this factor weighs in favor of dismissal.

     b. *The Nevada District Court is not Familiar With Applying French Law.*

"A court's unfamiliarity with and need to apply foreign law strongly favors dismissal." *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-HDM-VCF, 2015 WL 6661479, at *7 (D. Nev. Oct. 29, 2015). This Court has previously dismissed a case for forum non conveniens because any interest a U.S. citizen may have in the local forum is outweighed by the court's lack of familiarity with the foreign law which is to be applied to the claims. *See Stellia Ltd. v. B+S Card Serv. GmbH*, No. 2:12-cv-1099-GMN-PAL, 2013 WL 6388656, at *4-5 (D. Nev. Dec. 5, 2013) (finding that any interest that the citizens of Nevada had in the underlying action would be outweighed by this court's lack of familiarity with German law).

Here, the Ledger Live Terms and Conditions state that the agreement is governed by French law. (*See* Decl. ¶ 13, Ex. 1 § 11.1). "Because the dispute arises from, and relates to, the Ledger Live Terms of Use (see Section I(A), supra) French law will govern the claims and defenses for the Parties in this case. As illustrated in Stellia, the case should be dismissed because this Court is unfamiliar with French law and this unfamiliarity outweighs any interest that Plaintiff may have for this action to be heard by this Court.

     c. *Burden on Local Courts and Juries.*

Courts have found burdens on local courts and juries in the context of foreign law weighs in favor of dismissal when the forum has little connection to the controversy at hand. *See, e.g., Superama Corp. v. Tokyo Broad. Sys. Television, Inc.*, No. CV 22-0299-MWF (JCx), 2025 WL 4061973, at *6 (C.D. Cal. Dec. 2, 2025) (finding this factor weighed in favor of dismissal where juries would be "burdened by having to apply Japanese law and [would] be 'unconnected' to the case."). Here, allowing the Plaintiff to pursue his claims in Nevada would be inconvenient and an inefficient use of this Court's judicial resources because Ledger is not a Nevada resident, and the majority of witnesses and evidence

10

are in France. (*See* Decl. ¶ 11). The jurors have no connection to the controversy at issue and will be unfamiliar with French law. Thus, this factor weighs in favor of dismissal.

> ### d.   The French Court's Docket Would Not be Unduly Burdened.

Whether the foreign jurisdiction's docket would be unduly burdened by transfer of the matter is the "most speculative" factor. *See Babbage Holdings, LLC v. Ubisoft, Inc*., No. 2:13-CV-758-JRG, 2014 WL 4913092, at *4 (E.D. Tex. Sep. 29, 2014) ("This factor is the 'most speculative,' and in situations where 'several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors.'") (citation omitted). Because dismissal based on speculation as to the French court's docket is improper, and other public interest factors weigh in favor of dismissal, this factor does not weigh against Ledger.

> ### e.   The Parties Would Not Incur Significant Costs in Litigating in France.

Finally, cases in this circuit have been dismissed because the burden to litigate a dispute where a significant amount of evidence is located in a foreign jurisdiction weighs in favor of dismissal. *See Wondershare Tech. Grp. Co. v. Superace Software Tech. Co., Ltd.*, No. 25-cv-07322-JSC, 2026 WL 103182, at *4 (N.D. Cal. Jan. 14, 2026) (finding the public factors weighed in favor of dismissal because California had "little interest in adjudicating a dispute between foreign entities over globally used software" and the court "would be further burdened by litigating a dispute where a significant amount of evidence is located outside the United States and/or in [a foreign language]".)

Here, Ledger does not have any offices or employees in Nevada. (*See* Decl., ¶¶ 9-10). All witnesses who could testify as to the installation and operation of Ledger Live reside in France. (*See id.*, ¶ 11). Additionally, France uses more streamlined trial procedures, and it will in fact be faster and less expensive to litigate in France than in Nevada. *Behrens v. Arconic*, Inc., No. 19-2664, 2019 WL 7049946, at *5 (E.D. Pa. Dec. 20, 2019) ("… robust pretrial discovery as practiced in the United States is not accepted in most foreign countries, including England and France." (internal citations omitted)). Therefore, it is likely the parties would incur fewer costs associated with discovery should this matter be litigated in France. Because all of the public factors weigh in favor of Ledger, this Court should dismiss the complaint for forum non conveniens.

II.   **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF SHOULD BE GRANTED.**

If this Court does not dismiss Plaintiff's claim for *forum non conveniens*, the Complaint should still be dismissed with prejudice for failure to state a claim upon which relief could be granted. Plaintiff's claims for intentional misrepresentation, gross negligent misrepresentation, and gross negligence are insufficiently pled and should be dismissed.

A.   **The Complaint Fails to Sufficiently Allege Intentional Misrepresentation.**

To prevail on a claim for intentional misrepresentation under Nevada law, "a plaintiff must allege that [the] (1) defendant made a false representation; (2) defendant knew or believed the representation to be false; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a result of his reliance." *Strong v. Bank of N.Y. Mellon*, No. 2:13-cv-656-JAD-GWF, 2015 WL 3369564, at *1 (D. Nev. May 22, 2015). Plaintiff fails to sufficiently allege any of these four elements.

1.   **Ledger's Alleged Representations are Not False.**

"To sufficiently state a claim for intentional misrepresentation, the plaintiff must allege, among other elements, 'a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation.'" *Saticoy Bay, LLC et al. v. Thornburg Mortg. Sec. Trust*, 138 Nev. 335, 339, 510 P.3d 139, 143 (2022) (quoting *Nelson v. Heer*, 123 Nev. 217, 225 (2007)). Statements that are true cannot support a claim for intentional misrepresentation. *Hardy v. Chromy*, 367 P.3d 777 (2010) (holding plaintiff's intentional misrepresentation claim without merit because charges brought against him by hospital terminating him for accessing pornographic images on state computers was not false because investigation revealed pornographic images found under plaintiff's username); *see also WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F.Supp.2d 1180, 1193–94 (D. Nev. 2010) (explaining that to support a claim for intentional misrepresentation the complaint must allege facts that the representation was false such as, "he bought a house from defendant, that the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill." (internal citation and quotation omitted)).

For example, in *Reed v. Allstate Ins. Co.*, No. 2:15-CV-01759-GMN-VCF, 2016 WL 1558364

(D. Nev. Apr. 14, 2016), the plaintiff brought an action for intentional misrepresentation against his insurance carrier alleging that the carrier had "falsely represented that it had corrected [an error] on [a report]." *Id.* at *3-4. The defendant moved to dismiss arguing that the plaintiff failed to adequately allege that it had made a representation that was false. *Id.* at *4. The court held that the defendant did not make "any false representation in the Letter" because the representations in the letter stated that the defendant had "provided a correction form and forwarded [it] to CLUE on [his] behalf" which "[did] not indicate that [d]efendant had corrected the error." *Id.* The court granted defendant's motion to dismiss because "the contents of the Letter belie Plaintiff's allegations" and failed to show that the defendant made a representation that was false. *Id.*

Here, the statements identified in the Complaint are not false. In paragraph 3 of the Complaint, Plaintiff identifies four different statements allegedly made on the Ledger website. (*See* Compl. ¶ 3). Although Plaintiff quotes these alleged representations, he fails to show how these statements are false (*see id.* ¶¶ 3-4) or how Ledger "repeatedly and regularly made misrepresentations of fact[.]" (*Id.* ¶ 31).

Like the letter in Reed, the alleged quotes from the Ledger website themselves "belie Plaintiff's allegations" of misrepresentation. First, Plaintiff alleges that Ledger represented it "built all its technology with the goal of getting certified" but does not allege that such statement is false, i.e., that Ledger did not build all its technology with the goal of getting certified. (*See id.* ¶ 3). The Complaint also alleges that Ledger represented, "Ledger Live is a single application that allows you to manage your device and access countless blockchain apps and services directly from your device" and that "you can do so knowing that transactions you sign in Ledger Live are secure and transparent." (*Id.*) Plaintiff does not allege that Ledger Live is not a single application to manage multiple devices, nor does he allege that the transactions are not secure or transparent. Similarly, Plaintiff does not allege that the statement "the Ledger ecosystem offers tools to ensure you never need to transact blindly" (*id.*) is false, or that Ledger's ecosystem does not offer tools to assist with transactions. Plaintiff merely quotes four statements allegedly made on the Ledger website and asks this Court to speculate that they must have been false because Plaintiff voluntarily clicked on a phishing scam which allegedly caused him to lose cryptocurrency. But, mere speculation cannot support a cause of action. *See Chattem v. BAC Home Loan Servicing LP*, No. 2:11-CV-1727-KJD-RJJ, 2012 WL 2048199, at *2 (D. Nev. June

5, 2012) ("Factual allegations must be enough to raise a right to relief above the speculative level." (internal citation omitted)); *see also LaPena v. Las Vegas Metro. Police Dep't*, No. 2:21-CV-2170 JCM (NJK), 2023 WL 8186592, at *4 (D. Nev. Nov. 27, 2023). As in Reed, Plaintiff's intentional misrepresentation claim is without merit because he has not alleged any facts showing that the statements made on the Ledger website are not true.

Nevertheless, Plaintiff may argue that the statement "[c]reating the most secure crypto wallet involves testing both the physical components and the firmware" and that testing "ensures that Ledger wallets are impenetrable" implies that Ledger represented its wallet is the "most secure" or is "impenetrable." (Compl. ¶ 3). However, as explained previously, Plaintiff cannot rely on mere speculation to sufficiently state a claim. *See Chattem*, 2012 WL 2048199, at *2; *see also LaPena*, 2023 WL 8186592, at *4. And, even then, the statement merely suggests that Ledger is attempting to create the "most secure" crypto wallet – it does not allege that Ledger has created the "most secure" crypto wallet or that the wallet is impenetrable. (*See* Compl. ¶ 3). The allegation itself illustrates the statement was made within the context of routine firmware testing and at most are future promises, which are insufficient to establish intentional misrepresentation. *See Tai-Si Kim v. Kearney*, 838 F.Supp.2d 1077, 1097 (D. Nev. 2012) (granting defendant's motion for summary judgment as to plaintiff's negligent and intentional misrepresentation claims because they were based on non-actionable promises of future performance where no evidence existed that the statements were false at the time they were made).

But the Complaint fails for another reason. Even if Plaintiff adequately alleged that Ledger represented that its wallet was the most secure, Plaintiff has not alleged that this is an untrue statement. Indeed, as discussed more below, Plaintiff himself admits that "Defendants' [made] frequent advice to 'never share your 24-word recovery phrase.'" (*See* Compl. ¶ 16). Plaintiff made the active decision to share his recovery phrase despite this advice. Because Plaintiff fails to allege that the statements identified in the Complaint were in fact false, dismissal is warranted.

**2.**     **The Statements were Not Known or Believed to be False by Ledger.**

Even if the statements identified in the Complaint are false, Plaintiff fails to sufficiently allege that Ledger knew or believed the statements to be untrue. Instead, some statements can be qualified as puffery which, under Nevada law, does not constitute statements made with knowledge of falsity. *See*

14

*Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992). For example, in *Bulbman*, the court found that the defendant's representations regarding the cost and installation time of a system were merely estimates and opinions based on past experience, and thus not actionable in fraud. *Id.* The court further explained that statements about the reliability and performance of the system amounted to commendatory sales talk or "puffing," which is not actionable. *Id.* (citing *Clark Sanitation v. Sun Valley Disposal*, 87 Nev. 338, 487 P.2d 337 (1971).

Here, Plaintiff only makes conclusory allegations that "Defendants either knew or should have known that their statements were not accurate" (*see* Compl. ¶ 33) which cannot support his claim for relief. *See Ashcroft*, 556 U.S. at 678. Instead, Plaintiff references statements on the website that are Ledger's opinions about the reliability and performance of the Nano wallet. (*See* Compl. ¶ 3).

In an attempt to win on this element, Plaintiff may cling to his allegations that Ledger "knowing[ly] fail[ed] to meet and maintain adequate security measures and protocols" or that Ledger "disregard[ed] [] known security vulnerabilities" (*see id.* ¶ 9) or that Ledger had "pre-existing knowledge of such nefarious activity" (*see id.* ¶ 13). However, Plaintiff would again ask this Court to imply facts not alleged because these allegations are insufficient to allege that Ledger knew or believed the representations identified in paragraph 3 of the Complaint were false. For example, Plaintiff alleges that the statement, "Ledger has built all its technology with the goal of getting certified at different levels by a set of third party auditors[.]" is misleading (*see id.* ¶ 3), but he does *not* allege that Ledger knew that statement was false, *i.e.*, that Ledger knew it had *not* built all its technology with the goal of getting certified. Although Plaintiff generally alleges Ledger's knowledge that its technology failed to meet adequate security measures or that Ledger allegedly knew of prior cyberattacks, the Complaint does not allege that Ledger made any such representations to Plaintiff. For this reason, the claim fails.

### 3.    Ledger Did Not Induce Plaintiff to Rely on the Statements.

A complaint must be dismissed for failure to plead that the alleged injury was caused by actual reliance on the alleged misrepresentation. *See Collins v. Burns*, 103 Nev. 394, 397, 741 P.2d 819, 821 (1987) ("Lack of justifiable reliance bars recovery in an action at law for damages for the tort of deceit."). For example, in *Meredith v. Weilburg*, No. 3:13-cv-00277-RCJ-WGC, 2013 WL 5658181 (D. Nev. Oct. 15, 2013), Weilburg rented a home to Meredith and conducted extensive renovations to

15

the home based on Meredith's representations that she was in excellent physical condition and had excellent credit. *Id.* at *1. After it was discovered that Meredith suffered from severe allergies and had poor credit, Weilburg brought claims of negligent misrepresentation against Meredith, alleging that Meredith knew the statements about her health and credit were false at the time she made them and that he relied on her representations to make several improvements at the property that he would not have otherwise made. *Id.* at *1-2. Meredith moved to dismiss the claim. *Id.* at *1. The court held that Weilburg failed to adequately plead that his alleged injury was caused by actual reliance on Meredith's representations because "[h]is pleadings do not allege, with any degree of specificity, how her alleged misrepresentations caused him to make costly and allegedly unnecessary renovations. Instead, he merely states that 'he justifiably relied . . . upon [the] false representations by making numerous renovations at the [House]." *Id.* The court held that "[s]uch a conclusory and formulaic recitation of the elements of a claim is insufficient under the Iqbal standard." Notably, the court also concluded that allegations concerning intent are "not alone sufficient to support a plausible claim that [the] injury was caused by actual reliance." *Id.* at *6.

Here, like the plaintiff in Meredith, Plaintiff again relies on conclusory allegations that "Defendants made the statements with the intention that Plaintiff would rely on them by purchasing the Nano wallet from them and using it to secure his cryptocurrency transactions" (*see* Compl. ¶ 31) and that "Plaintiff reasonably and actually relied on Defendant's Statements[.]" (*Id.* ¶ 32). These allegations are conclusory and legal conclusions couched as fact which cannot be accepted as true for a motion to dismiss. *See Ashcroft*, 556 U.S. at 678. Aside from this, the Complaint is void of any factual allegations as to how Plaintiff relied on the statements made on the Ledger website. Plaintiff does not allege that he purchased the Nano in reliance on the specific representations identified in paragraph 3 of the Complaint. (*Id.* ¶ 3). Even more fatal to his claim, Plaintiff does not even allege that he himself saw the actual statements when purchasing the Nano and subsequently relied on them for the purchase. He instead alleges generically that he purchased the Nano "based upon the belief that the Nano S (and Ledger's platform) would deliver exactly the type of high-level security which he needed and as was consistent with industry standards." (*Id.* ¶ 5). Plaintiff does not say that he read any of the allegedly false statements and relied on them to make his purchase.

16

But, even if this Court assumes that Plaintiff did review all of the statements before making the purchase, the claim still fails. Any "reliance" Plaintiff claims he had based on the statements allegedly made on the website are further undercut by Plaintiff's own admitted knowledge of the Nano's security shortfalls. The Complaint clearly references an alleged hacking incident Ledger experienced in December 2023. (*See id.* ¶ 13). Such superior knowledge of the alleged issues with the Nano wallet security defeat any claim Plaintiff makes that he relied on alleged misrepresentations by Ledger as to the security of the wallet. *See Blanchard v. Blanchard*, 108 Nev. 908, 912, 839 P.2d 1320, 1323 (1992) (explaining that a duty to make a reasonable investigation arises when the recipient possesses information that would alert a reasonable person of similar intelligence and experience to potential issues or misrepresentations). Plaintiff's claim fails.

### 4. Plaintiff Suffered No Damages As a Result of His Alleged Reliance.

"[W]ith respect to the damage[s] element, this court has concluded that the damages alleged must be proximately caused by reliance on the original misrepresentation or omission." *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007). "Proximate cause limits liability to foreseeable consequences that are reasonably connected to both the defendant's misrepresentation or omission and the harm that the misrepresentation or omission created." *Id.* at 225-26, 163 P.3d at 426. Merely alleging damages without showing substantial evidence that the amount of damages sought is attributable to the tortious misrepresentation is insufficient to allege intentional misrepresentation. *Foster v. Dingwall*, 126 Nev. 56, 71, 227 P.3d 1042, 1052 (2010) (reversing award of compensatory damages to plaintiff because "it was not sufficient for [the plaintiffs] to merely assert the fact that they were damaged without showing substantial evidence that the amount of damages sought were [] attributed to the tortious misrepresentation[.]").

Here, Plaintiff does not allege that his damages are the proximate result of any reliance on the alleged misrepresentations. Instead, he alleges that his losses are the result of "Defendants' failure to take the available steps already used in the industry to prevent infiltration of their system by those posing as legitimate transactions." (*See* Compl. ¶ 18). Nowhere in the Complaint does Plaintiff allege facts that his damages were the result of any reliance on statements posted to the Ledger website – instead, he alleges his damages were caused by Ledger's alleged failure to secure the wallet. (*Id.*)

17

Plaintiff may point to his allegation that he "suffered harm as a direct and proximate result of Defendants' Statements," but such allegation is conclusory and cannot be considered on a motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

Moreover, the Complaint is silent on how Plaintiff allegedly lost $720,000. Plaintiff fails to plead any plausible facts connecting Ledger's marketing statements to the unauthorized transfer of his assets, only vaguely referencing "penetrat[ion]" of the system by "third-parties". (*See* Compl. ¶ 12). For this reason, and because Plaintiff admits that Ledger explicitly and frequently warned users to never share their 24-word recovery phrase, Plaintiff cannot plausibly allege that his damages were proximately caused by reliance on Ledger's security representations rather than his own failure to heed Ledger's explicit warnings. Accordingly, Plaintiff's Intentional Misrepresentation claim should be dismissed with prejudice.[3]

**B.     The Complaint Fails to Sufficiently Allege Gross Negligent Misrepresentation.**

Plaintiff brings a claim of "gross negligent misrepresentation" (*see* Compl., ¶¶ 36-40). A search of Westlaw for "gross negligent misrepresentation" in Nevada state and federal courts returns zero hits, and Ledger does not find any support for there being such a cause of action in Nevada. So, this cause of action can be dismissed with prejudice for that reason alone.

Nevada does recognize a cause of action for negligent misrepresentation. *See Donell v. Fidelity Nat. Title Agency of Nev., Inc.*, No. 2:07-cv-00001-KJD, 2012 WL 1669421, at *7 (D. Nev. May 11, 2012). Out of an abundance of caution, Ledger will proceed as if Count II of the Complaint is for negligent misrepresentation. "In order to prevail on the claim for negligent misrepresentation, Plaintiff must prove by a preponderance of the evidence that: (1) Defendants, in the course of an action in which they had a pecuniary interest, failed to exercise reasonable care or competence in obtaining or

---

[3] Additionally, "Courts in the Ninth Circuit have held that claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Nev. Rest. Servs., Inc. v. Factory Mut. Ins. Co.*, No. 2:22-cv-01104-RFB-VCF, 2023 WL 2572301, at *3 (D. Nev. Mar. 20, 2023). A party alleging fraud must allege "'the who, what, when, where, and how of the misconduct charged,'" including "what is false or misleading about a statement, and why it is false.'" *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citations omitted). As discussed above in Section II(A), supra, the Plaintiff has failed to allege facts necessary to allege the statements were fraudulent, how they were false, and why they were false and the Court should also dismiss under this standard.

communicating information to Plaintiff; (2) Plaintiff justifiably relied on this information; and (3) Plaintiff suffered damages as a result." *Id.*; *see also Lash Grp., LLC v. Daya Meds., Inc.*, No. 2:24-cv-00843-ART-EJY, 2025 WL 2374339, at *4 (D. Nev. Aug. 13, 2025). As discussed above in Section II(A), supra, Plaintiff fails to adequately allege that he justifiably relied on the statements made on the Ledger website or that he suffered any damages as a result of such reliance. Remaining as to this count is whether Ledger failed to exercise reasonable care or competence in communicating information to Plaintiff.

A negligent misrepresentation claim will be dismissed where the plaintiff fails to specifically allege plausible facts showing that the defendant knowingly made a false representation. *See Price v. OneWest Bank Grp.*, LLC, 2:12-cv-02030-GMN-GWF, 2013 WL 5328847, at *3 (D. Nev. Sept. 20, 2013) (dismissing plaintiff's claim for negligent misrepresentation because, "[p]laintiff has not alleged facts showing a plausible claim that [d]efendants supplied false information, knowing that the information would be justifiably relied upon, and failing to exercise reasonable care or competence in obtaining or communicating the information.").

For example, in *Momot v. Mastro*, No. 2:09-cv-00975-RLH-LRL, 2010 WL 2696635 (D. Nev. July 6, 2010), the parties entered into a contract for the allocation of a sale of real estate. *Id.* at *1. After finalizing the agreement, the plaintiff brought suit against defendant to reverse the agreement. *Id.* Defendant brought counterclaims for negligent misrepresentation alleging that, by bringing the lawsuit, the plaintiff negligently misled defendant regarding his intentions to abide by the agreement and alleged that the plaintiff "failed to exercise reasonable care or competence in communicating the false information." *Id.* at *2, 5-6. The court held that the negligent misrepresentation claim failed because "it is entirely conclusory and void of relevant facts" and defendant "[did] not indicate what information [plaintiff] negligently supplied or how he failed to take reasonable care before supplying the information." *Id.* at *6. Notably, the court distinguished the defendant's allegations of intentional conduct from negligent conduct, stating that "his intention to be bound by the [agreement] only supports their claim for fraud, not their claim for negligent misrepresentation." *Id.* (holding an assertion that a party intentionally misled the other is a factual assertion that "cannot be used to support the [] claim that Momot negligently misled them").

Here, the alleged statements are not false; therefore, this Court need not conclude whether Ledger took any care in making the statements. Further, Plaintiff has not alleged any reasonable reliance (or, frankly, reliance at all) on the statements. Even had Plaintiff read the statements before purchasing the product, Plaintiff does not identify why it makes sense for Plaintiff to willingly provide his password and recovery tools to third-parties.

The Complaint is also void of any facts illustrating how Ledger failed to take reasonable care before making the alleged statements on its website. Instead, in a singular paragraph Plaintiff only makes allegations that amount to nothing more than legal conclusions couched as fact that "Defendants did not have reasonable grounds for believing the Statements to be true at the time they were made" and that "they knew or should have known they suffered from vulnerabilities which had [sic] the ability to remedy, yet chose not to." (Compl. ¶ 39). These allegations do not speak to whether Ledger failed to use reasonable care in making the statements identified in paragraph 3 of the Complaint and are further contradicted by the allegations in the Complaint that Ledger did warn consumers of the risk of cyberattacks with "'FYI' type notices" and "Defendants' frequent advice to 'never share your 24-word recovery phrase[.]" (*Id.* ¶¶ 13, 16). The claim should be dismissed.

### C.    The Complaint Fails to Sufficiently Allege a Claim for Gross Negligence.

"A claim for gross negligence [] is separate from a normal negligence claim." *Underwood v. O'Reilly Auto Parts, Inc.*, 699 F.Supp.3d 1049, 1057 (D. Nev. 2023) (punctuation and citations omitted). "Gross negligence requires that a defendant go beyond mere negligence by failing 'to exercise even the slightest degree of care.'" *See ATLP by and through Taylor v. Corecivic, Inc.*, No. 2:21-CV-2072 JCM (EJY), 2022 WL 22652601, at *4 (D. Nev. Aug. 15, 2022). To state a claim for gross negligence a plaintiff must establish that the defendant failed "to exercise even the slightest degree of care" in his conduct." *Id.* (citation and internal quotations omitted); *see also Porchia v. City of Las Vegas*, 138 Nev. 29, 35-36, 504 P.3d 515, 521 (2022) ("Gross negligence is a 'very great negligence, or the absence of slight diligence, or the want of even scant care' that 'amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected' but 'falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.'" (citation omitted)). Where a complaint fails to allege

20

sufficient facts showing such absence or want of even slight diligence or care, the claim must be dismissed. *See Martin v. Collier*, No. 2:11-cv-0320-LRH-GWF, 2011 WL 1628028, at *5 (D. Nev. Apr. 28, 2011) (dismissing gross negligence claim where allegations were conclusory in nature because "'bare assertions'" and "'legal conclusions'" are insufficient to state a claim (citations omitted)); *see also ATLP*, 2022 WL 22652601, at *4 (dismissing gross negligence claim where plaintiff failed to allege the additional element required for gross negligence).

For example, in *ATLP*, 2022 WL 22652601, at *3, the plaintiff brought suit against the defendant on behalf of a decedent who died in prison from COVID-19. The plaintiff alleged that the defendant was grossly negligent by failing to adequately follow policies to prevent COVID infection even though the defendant knew the prisoner was a high risk for infection. *Id.* Specifically, the plaintiff alleged that the defendant's employees sometimes failed to wear masks or did not always wear masks. *Id.* at *4. The court pointed out that plaintiff "defeats her own argument" by alleging that defendants "*sometimes* failed to wear masks" or that staff "did not *always* wear masks." *Id.* The court held that, because of these allegations, the "complaint fails to allege the additional element required for gross negligence" because "the fact that [defendant]'s employees sometimes made these omissions means that the converse must also be true; sometimes they did take those precautions" and that "[t]aking some level of precaution, even if inconsistently, is not a failure 'to exercise even the slightest degree of care.'" *Id.*

Here, the Complaint is void of any factual allegations that Ledger failed to exercise even the slightest degree of care in either the statements made on the website or in maintaining the security of the Nano wallet. On the contrary, the Complaint shows that Ledger did take precautions to secure the wallet and to warn against cyberattacks. Plaintiff defeats his own gross negligence claim by alleging that Ledger posted "general 'FYI' type notices" to consumers warning against "nefarious activity" (*see* Compl. ¶ 13) and gave "frequent advice" to "never share your 24-word recovery phrase[.]" (*Id.* ¶ 16). As explained in *ATLP*, "taking some level of precaution, even if inconsistently, is not a failure to 'exercise even the slightest degree of care[.]" 2022 WL 22652601, at *4. Ledger takes precautions to warn consumers of cyberattacks and goes as far as to explicitly instruct its users to never share their recovery phrase – a warning that is posted as a banner at the top of the Ledger website which reads in

full: "Beware of phishing attacks, Ledger will never ask for the 24 words of your recovery phrase. Never share them."[4] Indeed, Ledger's Terms of Use specifically warn users that cybersecurity is a risk. (*See* Decl. ¶ 13, Ex. 1 § 4.4) ("Hackers or other groups or organizations may attempt to interfere with Ledger's products and information systems in several ways, including without limitation denial of service attacks, side-channel attacks, spoofing, smurfing, malware attacks, or consensus-based attacks."). Ledger's explicit warnings to consumers of hacking practices, and its encouragement to guard against such cyber theft is a far cry from "the absence of slight diligence, or the want of even scant care'" as required to sufficiently plead gross negligence.

Nevertheless, in support of his gross negligence claim Plaintiff may rely on his allegations that Ledger breached "industry established best practices." (Compl., ¶ 43). But, Plaintiff's allegations are insufficient. Plaintiff only loosely references standards recognized in the Securities and Exchange Commission Guidance but fails to identify the actual standards Ledger allegedly failed to implement. (*Id*. ¶ 6.) Even then, Plaintiff alleges that Ledger offers a combination of encryption protocols, multi-signature security, cold storage capability, and a verification system. (*Id*. ¶ 8). Although Plaintiff includes conclusory, unsupported opinions that such safeguards are "inadequate" or "insufficient" it is further evidence that Ledger is implementing care and diligence in securing the crypto wallet.

Furthermore, Plaintiff's scattershot references to "AML" and "KYC" requirements are precisely the type of threadbare, conclusory allegations prohibited by *Iqbal*. Plaintiff pleads no plausible facts establishing that Ledger was under any legal duty to implement such regulatory frameworks, let alone how their alleged absence proximately caused a user-driven phishing loss. As explained in *ATLP*, even allegedly inconsistent or allegedly inadequate safeguards defeat a claim for gross negligence. *See* 2022 WL 22652601, at *4 (holding that plaintiff "defeats her own argument" by alleging that defendants "*sometimes* failed to wear masks" or that staff "did not *always* wear masks"

---

[4] The Court can take judicial notice of the public Ledger website domain. *See Bank of Am., N.A. v. Casoleil Homeowners Ass'n*, No. 3:16-cv-00307-MMD-WGC, 2019 WL 2601555, at *2 (D. Nev. June 25, 2019) (granting request for judicial notice of publicly available information on website); *see also United States v. My Left Foot Children's Therapy, LLC*, No. 2:14-cv-01786-MMD-GWF, 2017 WL 1902159, at *7 (D. Nev. May 9, 2017) (taking judicial notice of meeting minutes which were publicly available on the Board's website).

22

because "the fact that [defendant]'s employees sometimes made these omissions means that the converse must also be true; sometimes they did take those precautions" which "is not a failure 'to exercise even the slightest degree of care.'"). The claim should be dismissed.[5]

**CONCLUSION**

For the reasons stated herein, Ledger respectfully requests that this Court grant its Motion to Dismiss the Complaint, with prejudice.[6]

---

[5] Additionally, Nevada recognizes the economic loss doctrine, which holds that "unless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 74, 206 P.3d 81, 87 (2009). Here, the only damages alleged in the Complaint are economic and is further grounds to dismiss the gross negligence claim.

[6] The Court should dismiss the Complaint with prejudice because "amendment would be futile." *Spikes v. Nevada*, No. 2:24-cv-00528-RFB-DJA, 2025 WL 289217, at *5 (D. Nev. Jan. 23, 2025) (dismissing claim with prejudice where the allegations did not support the claim.) Amendment is considered futile "if no set of facts can be proved under the amendment that would constitute a valid claim or defense." *Dearaujo v. PNC Bank, Nat'l Ass'n*, No. 2:12-cv-00981-MMD-PAL, 2012 WL 5818131, at *2 (D. Nev. Nov. 15, 2012) (finding amendment futile where Plaintiff could not allege any additional facts consistent with the Complaint to cure the identified deficiencies). Here, Plaintiff cannot allege any facts within an amendment to constitute a valid claim.

23

Dated: June 22, 2026.

DENTONS US LLP

By:   */s/ Leanne E. Sunderland*
     MARK A. SILVER, ESQ.
     *(Admitted Pro Hac Vice)*
     Georgia Bar No. 811928
     LEANNE E. SUNDERLAND, ESQ.
     *(Admitted Pro Hac Vice)*
     Georgia Bar No. 351965

DENTONS DURHAM JONES PINEGAR P.C.

*/s/ Trey A. Rothell*
     TREY A. ROTHELL, ESQ.
     Nevada Bar No. 15993

*Attorneys for Ledger SAS*

24

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Date: June 22, 2026          */s/ Leanne E. Sunderland*
                            An employee of Dentons US LLP

25