**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Steven Khunovich,

Plaintiff

v.

Ledger SAS, a foreign corporation; and DOES 1 through 25, inclusive,

Defendants

Case No.: 2:26-cv-00016-JAD-MDC

**Order Granting Motion to Dismiss and Closing Case**

[ECF No. 24]

Plaintiff Steven Khunovich used Ledger SAS's platform to store and protect his cryptocurrency. Like physical wallets, Ledger's systems hold currency. Unlike physical wallets, cryptocurrency hardware wallets use security protocols like encryption, enhanced-cold-storage capabilities, multi-factor authentication, and customer-verification systems. When cryptocurrency was stolen from Khunovich's Ledger wallet, he sued Ledger, alleging that his reliance on the company's misleading representations about its security systems caused him a $720,000 loss.

Ledger moves to dismiss, arguing that Khunovich's intentional-misrepresentation, gross-negligent-misrepresentation, and gross-negligence claims don't belong in this court because the terms of use that he agreed to when he downloaded Ledger's app require him to seek relief in Paris, France. I find that Ledger's forum-selection clause is enforceable against Khunovich; the clause doesn't violate Nevada public policy; and it is mandatory, not permissive, so Khunovich must resolve this dispute in France. So because Paris is a more *à propos* forum for Khunovich's claims, I grant Ledger's motion to dismiss under the forum non conveniens doctrine and close this case.

**Background**

Ledger designs cryptocurrency hardware wallets for users to store and protect their funds.[1] A Ledger account holder must download Ledger Live, an app that allows the user access to his wallet.[2] The app asks users to accept terms and conditions before logging into their wallet; those terms require customers to resolve all claims resulting from the agreement, including "non-contractual obligations," in a Parisian court.[3]

Khunovich purchased the Ledger Nano S wallet to store his cryptocurrency.[4] He alleges that Ledger's security assurances on its website—Ledger's technology is "certified at different levels by a set of third-party auditors," transactions through Ledger Live are "secure and transparent," Ledger employs a "security evaluation team" to test the product's security, and Ledger's ecosystem allows users to "never need to transact blindly"[5]—were "materially misleading" and induced him to purchase the wallet and rely on its security protections.[6] He also claims that the company should have known about the inaccuracy of these statements and that it failed to maintain adequate security protocols.[7] He alleges that $720,000 was stolen from his Nano wallet as a result of these security vulnerabilities.[8]

---

[1] ECF No. 5 at ¶ 6.

[2] ECF No. 24-1 at ¶ 5 (decl. of Pascal Gauthier). I consider Gauthier's declaration because a court can accept declarations outside of the pleadings in a forum non conveniens analysis. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

[3] ECF No. 24-1 at ¶¶ 6, 13.

[4] ECF No. 5 at ¶ 5.

[5] *Id.* at ¶ 3.

[6] *Id.* at ¶¶ 4–5.

[7] *Id.* at ¶¶ 9, 31, 39 (describing an alleged December 2023 hacking incident that plaintiff claims should have alerted Ledger to its security vulnerabilities).

[8] *Id.* at ¶ 34.

Khunovich sues Ledger for intentional misrepresentation, gross negligent misrepresentation, and gross negligence.[9] Ledger moves to dismiss Khunovich's claim under Federal Rule of Civil Procedure (FRCP) 12(b)(6), and also under the doctrine of forum non conveniens because Ledger's terms of use include a mandatory forum-selection clause.[10]

## Analysis

Courts enforce forum-selection clauses through the doctrine of forum non conveniens.[11] On a motion to dismiss for forum non conveniens, courts first determine whether there is a valid contract and, if so, whether the agreement's forum-selection clause applies to the plaintiff's allegations.[12] To interpret the forum-selection clause, courts apply federal law and "look for guidance to general principles for interpreting contracts."[13] Then, if the forum-selection clause applies to the plaintiff's dispute, courts assess whether the clause is enforceable under the forum non conveniens doctrine.[14] The plaintiff has the burden to show that the clause is unenforceable.[15] In resolving a motion to dismiss for forum non conveniens, a court may "consider facts outside the pleadings."[16]

---

[9] *Id.* at ¶¶ 30–46.

[10] ECF No. 24.

[11] *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

[12] *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086–87 (9th Cir. 2018), *holding modified by Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023).

[13] *Id.* at 1086 (cleaned up).

[14] *Id.* at 1087.

[15] *See Atl. Marine Const. Co.*, 571 U.S. at 63.

[16] *Argueta*, 87 F.3d at 324.

**A. Khunovich entered into a valid contract with Ledger Live, and the agreement's terms of use govern this dispute.**

Before considering whether Ledger's forum-selection clause is enforceable, the court must first assess whether the clause applies to Khunovich and his claims.[17] Khunovich argues that the contract is unenforceable because Ledger fails to show that he acknowledged the agreement's terms and, even if a valid contract exists, the terms of service are inapplicable to his claims.

***1. Ledger Live's sign-in wrap agreement gave Khunovich sufficient notice of its terms.***

Internet contracts come in two basic forms: clickwrap and browsewrap.[18] Clickwrap agreements require a user to accept terms and conditions before entering an app or website.[19] Websites using browsewrap agreements list their terms and conditions somewhere on the site via a hyperlink and do not require users to expressly assent to the terms before using the site.[20] "Sign-in wrap agreements" are a hybrid between clickwraps and browsewraps; these internet contracts link the user to terms of use and indicate that by signing up or continuing, the user will be bound by those terms.[21] But the sites don't require users to actually review the terms.[22] Sign-in wraps are enforceable if the site provides reasonably conspicuous notice of the terms and the

[17] *Yei A. Sun*, 901 F.3d at 1086.

[18] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

[19] *Id.*

[20] *Id.* at 1175–76.

[21] *Chabolla v ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).

[22] *Id.*

consumer takes an action (like clicking a button or checking a box) that shows his assent to the terms.[23]

### *a. Ledger Live used a conspicuous sign-in wrap agreement.*

Pascal Gauthier, Ledger's CEO, avers that "all users are required to accept the Ledger Live terms of use" during software installation "[t]o access and use the Ledger Live application."[24] Khunovich argues that this statement doesn't give the court enough information to determine whether its app used a clickwrap or browsewrap agreement, so its terms of use cannot be enforced against him.[25] And he asserts that at most, the court should consider the contract an "unenforceable" browsewrap agreement.[26]

Ledger replies that, even if a browsewrap, the agreement is enforceable because requiring Khunovich to sign up for Ledger Live and accept the terms and conditions gave him constructive notice.[27] It also cites to a declaration submitted in a Northern District of Illinois Ledger case in which Guillaume Mathias, its Vice President of Product, described the Ledger Live sign-up process and confirmed that Nano Wallet users must install Ledger Live and affirm that they agree to its terms of use.[28]

Khunovich doesn't provide the purchase date of his Nano Wallet, but he does allege that he "reasonably and actually relied on" Ledger's misleading statements on its website from 2018

[23] *Id.* at 1154–55.

[24] ECF No. 24-1 at ¶ 6.

[25] ECF No. 26 at 4.

[26] *Id.* at 3.

[27] ECF No. 29 at 2–3; *see Nguyen*, 763 F.3d at 1177 (citing cases enforcing forum-selection clauses if, by signing up, users confirm their agreement to the site's terms of service).

[28] ECF No. 29 at 3 (citing decl. of Guillaume Mathias, ECF No. 31-1, *Cabrera v. Ledger SAS*, No. 1:24-CV-00182 (N.D. Ill May 17, 2024) (Mathias decl.)); Mathias decl. at ¶¶ 7–8.

to January 2024 before purchasing the product.[29] In 2024, Ledger used a sign-in wrap agreement because the user had to click "[g]et started" above the statement: "[b]y continuing, you agree to Ledger's Terms & Conditions [hyperlinked]."[30]




The terms and conditions included the forum-selection clause.[31]

In *Stone v. Equifax Information Services*, the district court reviewed a nearly identical sign-in wrap agreement.[32] It held that the interface gave plaintiff notice that he was bound by the terms of use because the website hyperlinked the terms in colorful text that clearly stated "[b]y clicking 'Create Your Account' I accept and agree to your 'terms of use agreement.'"[33] The

[29] ECF No. 5-1 at ¶¶ 3–5.

[30] Mathias decl. at ¶ 12.

[31] *Id.* at ¶ 13.

[32] *Stone v. Equifax Info. Servs., LLC*, 826 F. Supp. 3d 1273 (D. Nev. 2026).

[33] *Id.* (cleaned up).

Ninth Circuit reached the same conclusion in *Oberstein v. Live Nation Entertainment., Inc.*, holding that terms "marked in bright blue font and distinguished from the rest of the text . . . located directly on top of or below each action button" gave users notice of the agreement's arbitration provision.[34]

The Ninth Circuit has endorsed the kind of sign-in wrap agreement present here. And I'm persuaded by the *Stone* court's finding that a nearly identical agreement provided sufficient notice to the plaintiff. The interface screenshot in Mathias's declaration provides reasonably conspicuous notice of the terms: the "Terms & Conditions" are hyperlinked in purple font, contrasting the white font in the rest of the sentence, and clearly state that "[b]y continuing, you agree to Ledger's Terms & Conditions and Privacy Policy."[35] So the sign-in wrap agreement put Khunovich on notice of Ledger's forum-selection clause.

#### ***b. Ledger has sufficiently established that Khunovich agreed to its terms of use.***

Khunovich also argues that Gauthier's declaration is insufficient to establish that he agreed to the contract's terms—Ledger doesn't include a screenshot of the interface or any specific information about when Khunovich viewed and proceeded past the sign-in wrap agreement.[36] Ledger replies that it doesn't need to give specifics about the date of Khunovich's

[34] *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516–17 (9th Cir. 2023); *c.f. Carbonell v. Seatgeek, Inc.*, 2025 WL 2643847, at *3–*4 (D. Nev. Sept. 15, 2025) (finding Seatgeek's sign-in wrap agreement insufficient to establish notice because the terms-of-use text was "the most unremarkable item on the sign-in pop-up" with "small, grey font" instead of a differently colored, bolded terms-of-use hyperlink).

[35] Mathias decl. at ¶ 12.

[36] ECF No. 26 at 4.

consent or provide the agreement with his signature because Gauthier confirms that these terms of use were in place during the period that Khunovich alleges he used Ledger Live.[37]

In *Stone*, the plaintiff argued that defendant's only evidence that he agreed to terms requiring arbitration was a declaration from the director of product operations.[38] The declarant, he argued, described his general knowledge of the website-enrollment process, but didn't discuss plaintiff's actual experience, so it failed to establish the existence of a contract.[39] But plaintiff didn't dispute the director's assertions that he enrolled in the interface featuring a sign-in wrap agreement and affirmatively clicked "Create Your Account."[40] The court explained that requiring the declarant to have "personal knowledge of [p]laintiff's specific enrollment data, or to validate what [p]laintiff saw on his device, 'imposes a far greater burden for personal knowledge than what is required.'"[41] So the court found that the declaration established a valid contract.[42]

I similarly find that Gauthier's declaration establishes that Khunovich agreed to Ledger's terms of use. Khunovich alleges that he purchased a Nano Wallet, and he doesn't dispute Gauthier's statement that his use of the device and Ledger Live "is governed by the Ledger Live terms of use."[43] Instead, he argues that Ledger needed to provide the date and time of his assent

---

[37] ECF No. 29 at 2 n.1 (citing ECF No. 24-1 at ¶ 13).

[38] *Stone*, 826 F. Supp. 3d at 1278–79.

[39] *Id.* at 1279.

[40] *Id.* at 1279–80.

[41] *Id.* at 1280 (quoting *Oatway v Experian Sols., Inc.*, 2024 WL 4879822, at *4 (W.D. Wash. Nov. 25, 2024)).

[42] *Id.*

[43] *See* ECF No. 24-1 at ¶ 7.

and his signature on the terms of use.[44] Gauthier doesn't need personal knowledge of Khunovich's interaction with the interface; it is enough that he and Mathias described the process each user must go through to use the interface. And Khunovich's contention that Ledger failed to present a screenshot of its interface is cured by the Mathias declaration, which the law permits me to consider here.[45] I thus find that Ledger's sign-in wrap agreement created a valid contract with Khunovich.[46]

***2. The Ledger Live agreement governs Khunovich's claims.***

Even if the contract is valid, Khunovich argues that it doesn't apply to his claims. In *Baton v. Ledger SAS*, an unpublished Ninth Circuit opinion, a Ninth Circuit panel analyzed the same forum-selection clause.[47] The plaintiffs in that case also bought Ledger's hardware wallets and alleged that a data breach exposed their personal information; they filed California consumer-law claims and tort claims.[48] The Ninth Circuit affirmed the district court's decision to enforce the broad language of Ledger's forum-selection clause for plaintiffs' tort claims because it "cover[ed] '[a]ny dispute, controversy, difference or claim arising out of or relating to' the agreement."[49]

---

[44] ECF No. 26 at 4.

[45] *Id.*; *see* Mathias decl. at ¶ 12.

[46] Khunovich also argues that Nevada Revised Statute (NRS) 97B.100(1) voids Ledger's forum-selection clause. ECF No. 26 at 3. NRS 97B.100 doesn't apply to this contract. It voids forum-selection provisions for "consumer form contract[s]," which are store-credit-card agreements, fixed-term payment plans, or other consumer leases for goods and services. Nev. Rev. Stat. §§ 97.095, 97.105, 97B.070, 97B.100.

[47] *Baton v. Ledger SAS*, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022) (unpublished).

[48] *Id.*; *see Baton v. Ledger SAS*, 2021 WL 5178827, at *2 (N.D. Cal. Nov. 8, 2021) (summarizing plaintiffs' claims).

[49] *Baton*, 2022 WL 17352192, at *2. The Ninth Circuit reversed the dismissal of plaintiffs' California consumer-law claims based on the California public policy against the waiver of consumer rights. *Id.*

Khunovich offers *Cabrera v. Ledger SAS*, in which a Northern District of Illinois district court found that the forum-selection clause did not cover plaintiff's claims.[50] In *Cabrera*, the plaintiffs brought claims under consumer-protection statutes, common-law-unjust-enrichment theories, and a federal-fraud statute, alleging that Ledger's misrepresentations about the security of the computer chips in its hardware wallets led plaintiffs to purchase the product then incur damage from a security breach.[51] Superficially, *Cabrera* seems indistinguishable from Khunovich's case. But the misrepresentations that the *Cabrera* plaintiffs relied on materially differ from those that underlie Khunovich's claims. In *Cabrera*, the plaintiffs relied on Ledger's statement that the private keys in its wallets' computer chips "are stored on the devices only and never leave the device, meaning that they cannot be accessed by third parties."[52] "Based on these statements . . . plaintiffs purchased [Ledger's] hardware wallets."[53] Most *Cabrera* plaintiffs purchased their wallets on Ledger's website; the terms and conditions on the site included a narrower forum-selection clause than Ledger Live's.[54] The *Cabrera* court differentiated these facts from *Baton*, explaining that the *Baton* parties didn't seem to dispute that plaintiffs' use of Ledger Live was intertwined with their tort claims.[55]

The statements Khunovich lists in his complaint are broader than the one in *Cabrera* and explicitly reference Ledger Live and the entire Ledger platform: "Ledger has built *all its*

---

[50] ECF No. 26 at 5 (citing *Cabrera v. Ledger SAS*, 777 F. Supp. 3d 900 (N.D. Ill. 2025)).

[51] *Cabrera*, 777 F. Supp. 3d at 904–05.

[52] *Id.* at 904–05.

[53] *Id.* at 905.

[54] *Id.* (quoting the website's terms and conditions, which stated that "[a]ny dispute relating to the application or interpretation of these [terms and conditions] which [cannot] be solved amicably will be brought before the French court with material and territorial jurisdiction, in accordance with the legal and regulatory provisions in force . . .").

[55] *Id.* at 910–11.

*technology* with the goal of getting certified at different levels by a set of third-party auditors, laboratories and certification authorities"; "*Ledger Live* is a single application that allows you to manage your device . . . [a]nd you can do so knowing that transactions you sign in *Ledger Live* are secure and transparent"; "the Ledger *ecosystem* offers tools to ensure you never need to transact blindly."[56] These statements, Khunovich alleges, induced him to purchase the Nano Wallet, use it to secure his transactions, and trust the security that Ledger provided in its devices and on its platforms.[57] The distinction between the *Cabrera* case and Khunovich's claims is narrow, but this case more closely resembles *Baton*, in which there was no dispute that plaintiffs' tort claims came at least partially from their use of Ledger Live. And Ledger Live's terms of use are broad enough to encompass Khunovich's intentional misrepresentation, gross-negligent misrepresentation, and gross negligence claims. So I find that the agreement is valid and enforceable against Khunovich.

**B. Public policy weighs in favor of enforcing Ledger's forum-selection clause because its terms are not unconscionable.**

Federal law governs the enforceability of forum-selection clauses.[58] Under federal law, a contract's forum-selection clause is presumptively valid "absent a strong showing that it should

---

[56] ECF No. 5-1 at ¶ 3 (emphasis added) (cleaned up).

[57] *See, e.g.*, *id.* at ¶¶ 37–39 ("Those [s]tatements were made with respect to the security of their device and platform even though they knew or should have known they suffered from vulnerabilities which had the ability to remedy, yet chose not to.").

[58] *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)). State law is relevant to the threshold validity of a forum-selection clause. *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 963–64 (9th Cir. 2022) (applying a California statute voiding the relevant employment contract).

be set aside."[59] There are three scenarios that can overcome this presumption: (1) the clause is a "product of fraud or overreaching," (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced," or (3) enforcement would violate a "strong public policy" of the forum state.[60] The plaintiff's choice of forum is irrelevant—private-interest factors weigh "entirely in favor of the preselected forum"—and the district court "should not consider arguments about the parties' private interests."[61] Because public-policy factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[62]

This is not an unusual case. Khunovich argues that Ledger's forum-selection clause is unenforceable because public policy favors litigating in a Nevada court.[63] He contends that the terms of use violate public policy because they are an unconscionable adhesion contract.[64] "[U]nconscionability is governed by state law."[65] Nevada law requires both substantive and procedural unconscionability for a court to refuse to enforce a contract provision.[66] Procedural unconscionability refers to a party's unequal bargaining power or misunderstanding of the

---

[59] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914 (9th Cir. 2019).

[60] *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)).

[61] *Atl. Marine Const. Co.*, 571 U.S. at 63–64.

[62] *Id.*

[63] ECF No. 26 at 5–6.

[64] *Id.* at 6–7.

[65] *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009).

[66] *Burch v. Second Jud. Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002).

provision's effects.[67] Substantive unconscionability focuses on the actual terms of the agreement and whether these terms are one-sided or bilateral.[68]

***1. Procedural unconscionability***

Khunovich contends that Ledger users have no bargaining power and no ability to negotiate terms, making the contract procedurally unconscionable.[69] Ledger responds that its agreement is not an adhesion contract and, even if it is, terms-of-use contracts entered into during an online transaction are not unconscionable.[70] An adhesion contract is a "standardized contract form offered to consumers of goods and services essentially on a 'take-it-or-leave-it' basis" without allowing the consumer to bargain and without letting the consumer use "the desired product or service except by acquiescing to the form of the contract."[71] The "distinctive feature" of adhesion contracts is that the party being offered the contract has "no choice as to its terms."[72]

To be sure, Ledger Live's agreement is an adhesion contract. Khunovich was presented with a stock form contract that he had no choice but to accept if he wanted to use Ledger's services. Ledger argues that the cases Khunovich cites involved non-compete and warranty agreements, not terms-of-use agreements.[73] But that is a distinction without a difference because

---

[67] *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018).

[68] *Id.* at 1162–63, 65.

[69] ECF No. 26 at 6–7.

[70] ECF No. 29 at 4–5.

[71] *Obstetrics & Gynecologists William G. Wixted, M.D., Patrick M. Flanagan, M.D., William F. Robinson, M.D. Ltd. v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985) (cleaned up).

[72] *Id.*

[73] ECF No. 29 at 4 (citing *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883 (Nev. 2023) and *Burch*, 49 P.3d at 647).

regardless of the subject matter, Khunovich was not in a position to negotiate Ledger's contract's terms. And the way the agreement was presented to him (while signing up for Ledger's app) gave him no meaningful choice about the contract's terms. So the agreement is procedurally unconscionable.

### *2. Substantive unconscionability*

But to avoid the enforcement of the forum-selection clause, Khunovich also needs to establish that the agreement is substantively unconscionable. He argues that Ledger doesn't show that he knowingly assented to its terms of use, that he had to accept the terms on a take-it-or-leave-it basis, and that enforcing the clause would mean requiring a Nevadan to litigate his claims in France.[74] As discussed, Ledger doesn't need to provide a record of Khunovich's assent to its terms of use; its declarants verified that all Ledger users must agree to the app's terms before signing up. Khunovich's second argument—that he had no negotiating power—goes to the agreement's procedural unconscionability, which has already been established. His only argument about the actual terms of the contract is that it unfairly forces individuals to litigate abroad.

Both parties address this argument by explaining why the public-interest factors of the forum non conveniens analysis weigh in their favor. Ledger avers that the public-interest factors favor a Parisian forum because the contract requires a court to apply French law, Nevada has no local interest in Khunovich's lawsuit, and the case would be more burdensome to courts here than those in Paris.[75] It also explains that litigation would be less costly in France because

[74] ECF No. 26 at 6–7.

[75] ECF No. 24 at 9–11.

witnesses and evidence are located there.[76] Khunovich responds that Nevada has an interest in this case: it wants to protect its citizens from false advertising.[77] He asks the court to ignore Ledger's argument that French law would apply because it hasn't shown a valid contract.[78] And he contends that because "[a]ll of the available judicial appointments for the federal district court" of Nevada are "filled," there is no burden on the court or Nevada jurors.[79] He concludes that Ledger provides "no evidence" that litigation would be cheaper in France.[80]

Because I find that Khunovich entered into a valid contract with Ledger, the governing-law provision is also valid. So a Nevada court would have to apply French law to resolve Khunovich's dispute. His arguments about local interests are unavailing—he doesn't allege that his money was stolen in Nevada, that Ledger advertised exclusively in Nevada, or that any of his Ledger-related activities occurred in Nevada.[81] The misrepresentations he relies on were all on Ledger's website, which can be viewed globally. On the other hand, France would have a strong interest in regulating how its corporations advertise, while any interest Nevadans might have is minimal in comparison to the time and resources the court and its jurors would expend if it adjudicated this case because of their unfamiliarity with French law.[82] And a fully appointed judicial bench doesn't resolve the concerns about the court's limited resources. So the forum

---

[76] *Id.* at 11; ECF No. 29 at 6.

[77] ECF No. 26 at 12–13.

[78] *Id.* at 13.

[79] *Id.* at 14.

[80] *Id.*

[81] *See* ECF No. 29 at 7.

[82] *See Stellia Ltd. v. B+S Card Serv. GmbH*, 2013 WL 6388656, at *5 (D. Nev. Dec. 5, 2013) (dismissing case under the doctrine of forum non conveniens because the governing contract required the court to apply German law).

non conveniens public-interest factors weigh in favor of Ledger, and I find no evidence of substantive unconscionability preventing Khunovich from litigating his case in France.[83]

**C. The terms of use designate France as the exclusive forum for Khunovich's dispute.**

Even if the contract is valid and Khunovich fails to overcome the presumption of enforceability, he contends that the forum-selection-clause language doesn't make France the exclusive forum governing his dispute.[84] Khunovich argues that Ledger's forum-selection clause is permissive because it fails to include the "words of exclusivity" that identify a court in Paris for his claims.[85] Ledger responds that the cases Khunovich cites are inapposite because the forum-selection clauses at issue used permissive language—in both cases, the parties "agreed" to a specific jurisdiction.[86]

A forum-selection clause must "clearly designate the forum as the exclusive one."[87] In *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, the Ninth Circuit found that a clause stating that a forum "shall have jurisdiction over the parties in any action" is permissive.[88] But in *Docksider, Ltd. v. Sea Technology, Ltd.*, the Ninth Circuit held that if the forum-selection clause specifies

[83] Khunovich argues that the private-interest factors weigh against dismissal, ECF No. 26 at 9–10, but because private-interest factors aren't relevant in a forum-selection clause analysis, I don't address his private-interest arguments.

[84] *Id.* at 7–8.

[85] *Id.* at 8.

[86] ECF No. 29 at 6 (citing *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 108 (Nev. 2015) and *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76 (9th Cir. 1987)).

[87] *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036–37 (9th Cir. 1995).

[88] *Hunt Wesson Foods, Inc.*, 817 F.2d at 76.

that the agreement "shall be deemed to be in" in a certain forum, then jurisdiction in that forum is mandatory.[89] So every word in a forum-selection clause matters.

Ledger's terms say that a dispute like this one "shall be referred to and finally resolved by the competent courts of Paris, France."[90] The language more closely resembles that in *Docksider* than in *Hunt Wesson*. Instead of saying that Paris "shall" have jurisdiction—as in, it does have jurisdiction, but so could other courts—Ledger's terms say that cases shall *be referred to* and *finally resolved* in Paris. Ninth Circuit courts consistently enforce this type of mandatory forum-selection language.[91]

Khunovich doesn't have the "unusual case"[92] that justifies ignoring Ledger's forum-selection clause. He entered into a valid, enforceable agreement and public policy does not favor setting aside the contract for his case to be heard in Nevada. So I grant Ledger's motion to dismiss under the doctrine of forum non conveniens.

---

[89] *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F. 2d 762, 764 (9th Cir. 1989).

[90] ECF No. 24 at 1; ECF No. 24-1 at ¶ 13.

[91] *See Calisher & Assocs., Inc. v. RGCM, LLC*, 373 F. App'x 697, 698–99 (9th Cir. 2010) (unpublished) (finding the phrase "litigation shall be subject to the laws and Rules of Evidence of the state of California with the venue being Los Angeles County Superior Court" mandatory); *Docksider, Ltd.*, 875 F. 2d at 764 (finding the phrase "shall be" mandatory); *see also SmarterSwipe, Inc. v. Navarrete*, 2024 WL 5007294, at *3 (D. Nev. Oct. 31, 2024) (holding that the forum-selection clause—"[i]f court action is necessary, the federal or state courts of Nevada shall be the venue agreed upon by the parties"—was mandatory (cleaned up)). A forum-selection clause can specify a city, state, or county without specifying a venue within the jurisdiction; in those agreements (like this one) jurisdiction in the geographical area is mandatory, but venue is permissive. *See Hunt Wesson Foods, Inc.*, 817 F.2d at 76 (finding the clause "[t]he courts of California, County of Orange, shall have jurisdiction over the parties in any action at law" required the case to be heard in any Orange County court, state or federal).

[92] *Atl. Marine Const. Co.*, 571 U.S. at 63–64.

## Conclusion

Because Steven Khunovich entered into a valid agreement with Ledger SAS and Ledger's terms of use include a mandatory and enforceable forum-selection clause, IT IS ORDERED that Ledger's motion to dismiss **[ECF No. 24] is GRANTED without prejudice to his ability to bring his claims in Paris, France**.

**The Clerk of Court is directed to CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
October 22, 2026